**In re Kevin FROSCH, Debtor.**

**Kevin Frosch, Plaintiff,**

**v.**

**United States of America, City of Philadelphia, Defendants.**

**Bankruptcy No. 98–35948.
Adversary No. 99–0240.**

United States Bankruptcy Court,
W.D. Pennsylvania,
Philadelphia Division.

April 10, 2001.

John R. Crayton, Bensalem, PA, counsel for debtor.

Thomas M. Rath, Philadelphia, PA, District counsel for IRS.

## MEMORANDUM OPINION[1]

JUDITH K. FITZGERALD, Chief Judge.

Before the court for resolution following trial, conducted on July 12, 2000, is Debtor's federal income tax liability for years 1989, 1990, 1991, and 1992.[2] The IRS contends that the tax liabilities incurred by the Debtor in each of those four years are not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The IRS contends that the

---

1. The court's jurisdiction is not at issue. This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

2. The trial did not involve the Debtor's tax liabilities to the City of Philadelphia.

Debtor filed fraudulent returns or willfully[3] evaded payment of his tax liabilities in each of the four years in question. The IRS admits that Debtor timely filed his 1989 through 1992 tax returns, that it has not examined the Debtor's returns for 1989 through 1992, that it has not made additional tax assessments, and that the three-year statute of limitations for assessment under the Internal Revenue Code, 26 U.S.C. § 6501(a), for those years has expired. 26 U.S.C. § 6501(c)(2), however, excepts "willful attempts in any manner to defeat or evade tax[es]" indicating that "a proceeding in court for collection of such tax may be begun without assessment, at any time" and Debtor admits that the statute of limitations would not have run if the Debtor filed a false return or made a willful attempt to evade or defeat the tax. Joint Pre–Trial Statement (hereinafter abbreviated J.P.S.), p. 2.

The court has reviewed the testimony of the witnesses, the exhibits admitted into evidence and the Memoranda of Law submitted by the parties.

Debtor, Kevin Frosch, contends that he has neither willfully evaded nor attempted to defeat payment of his tax obligations. He testified that he married his wife, Daryl Cohen, on October 20, 1989, Transcript of Trial by Video Conference (hereinafter abbreviated as T.V.C.), p. 9. Debtor testified that his financial circumstances at that time were dire. He had a bank account with less than $1,000.00 in it. All of his personal belongings were housed in his truck, which also served as his residence. From time to time, he stayed with his sister who lived in Annapolis, Maryland. From 1989 through 1992, Debtor was self-employed as a handyman doing small home repair jobs. He described himself as a person who was not good at business although he was good at construction work. From a prior marriage, Debtor had incurred a child support obligation requiring him, every two weeks, to pay $200.00 plus $50.00 toward arrears. He testified that he used nearly all of his income to pay that obligation and his other bills (all from T.V.C., pp. 9, 10).

Debtor's wife, Daryl Cohen, however, was gainfully employed in her own business as a medical insurance specialist who handled professional claims. In each of the tax years in question the Debtor and Daryl Cohen claimed "married filing separate" status on their federal income tax returns. Debtor's returns showed that he owed a tax liability in each year. Debtor testified that he was unable to pay the liability in full in any of the four years at issue and that at the time of filing the bankruptcy petition he still owed the IRS for each of those years (T.V.C., p. 11). He also testified (T.V.C., p. 12) that 1) his returns and those of his wife were prepared by accountants; 2) he has a General Educational Development (G.E.D.) diploma; 3) he has no training in tax preparation or accounting; 4) he merely looked at the bottom line of the completed return as it was presented to him before signing and filing his return; and 5) if he had any funds available to pay toward his tax liability, he did so. The parties have stipulated (J.P.S., pp. 1 and 2) that Debtor reported $4,079.00 due in 1989, $3,558.00 due in 1990, $1,143.00 due in 1991, and $1,078.00 due in 1992. With penalties and interest accrued, the total tax liability now approximates $25,000.00.

■ I. The IRS' first contention is that Debtor falsely and fraudulently

---

**3.** "A debtor's actions are willful under § 523(a)(1)(C) if they are done voluntarily, consciously, or knowingly and intentionally."

*Dalton v. IRS,* 77 F.3d 1297, 1302 (10th Cir. 1996).

claimed itemized deductions to which he was not entitled. These were mortgage interest expense and business use of the home expense. Debtor testified (T.V.C., p. 10) that, for the tax years in question, he operated his handyman business through a sole proprietorship known as K & D Home Improvements (K & D). During that time, Debtor owned no real estate. Nonetheless, Debtor claimed on Schedule A (Itemized Deductions) that he was entitled to a mortgage interest deduction, a credit for real estate taxes paid, and a deduction for use of the premises for the conduct of his business from his home. Debtor claims he was ignorant of these items claimed on his returns until after the bankruptcy case was filed (T.V.C., p. 13). Debtor's wife also testified about this matter. She admitted that the real estate was in her name alone in the relevant time period (T.V.C., p. 32). Daryl Cohen has a Master's Degree in Administration and has served as a director of health and cancer hospital services in the New Jersey and Philadelphia areas for approximately twenty years (T.V.C., p. 38). She testified that she received mortgage interest forms (Form 1098) each year and put them with the information she presented to the accountants who prepared her returns and those of her husband (T.V.C., p. 39). She stated that she did not alter the forms (T.V.C., p. 40). She testified that she received forms 1098 regarding mortgage interest payment (T.V.C., p. 32) and that they indicated how much she had personally paid on the mortgage (T.V.C., p. 40). She stated that she specifically told the accountants that all of the assets belonged solely to her (T.V.C., p. 41). Nonetheless, she also testified that she did not learn of the improper deductions claimed on Debtor's returns until sometime within the past year (T.V.C., p. 41).

To discredit the testimony of the Debtor and his wife, the IRS called the two accountants who had prepared the 1989 through 1992 tax returns. Frederick Etskovitz testified that he prepared the 1989 and 1990 Form 1040 Federal Income Tax Returns for the Debtor and for his wife (T.V.C., p. 45). He testified to the review process that was employed at his firm (T.V.C., p. 54). He stated that he believed at the time an accountant in his office prepared the returns that the property was owned jointly. He had no present recollection as to how he concluded that the property was jointly owned other than to say that it would have been through a discussion with either the Debtor or his wife. Because the discussion would have taken place ten years ago, he was uncertain as to the source of the information (all at T.V.C., p. 49). He testified that had he been given a Form 1098 listing mortgage interest paid, he would have used that information in preparing the return. If it was not provided, he would have accepted the information provided by his client (T.V.C., p. 50). Mr. Etskovitz could not recall whether he or one of his ten associates actually prepared the returns in question (T.V.C., pp. 53, 54).

The IRS also called Christopher Mark DiGiacomo, the accountant who prepared the 1991 and 1992 personal income tax returns for the Debtor and for his wife (T.V.C., p. 56). He specifically recalled assisting in the preparation of the returns and stated that he had communicated directly with Daryl Cohen with respect to the information contained therein (T.V.C., p. 56). He was not certain that he had ever talked to Debtor about the returns (T.V.C., p. 60). He did not check his file in preparation for testimony to see whether it contained a Form 1098 (T.V.C., p. 64). He testified that the mortgage interest information from the Form 1098 would have been transferred to the tax return on Schedule A, Itemized Deductions, if the

1098 had been available (T.V.C., p. 64). Otherwise, the information on Schedule A would have been acquired from the taxpayer (T.V.C., p. 65).

The government also called Catherine A. Ponist. Ms. Ponist was the accountant who prepared the 1993 and 1994 personal income tax returns for Debtor and Ms. Cohen (T.V.C., p. 69). Most of her testimony did not involve the time periods at issue in this case. However, on cross examination, she was asked whether she had asked for and received Forms 1098 from her clients. She testified that Ms. Cohen did give her various documents including 1098 Forms (T.V.C., p. 80). However, banks issue 1098 Forms in only one Social Security number (T.V.C., p. 80). Therefore, the fact that the 1098 Form contains a designation of only one taxpayer is not conclusive that that taxpayer is the sole owner of the house.

The court credits the testimony of Daryl Cohen that she provided appropriate information to the accountants. Although the accountants testified that it was unlikely that their firms would have made mistakes in claiming mortgage interest deductions, the court credits the testimony of Ms. Ponist that the Form 1098 would be issued in the name of just one taxpayer, regardless of the number of owners of the home. The fair inference from the testimony of the various accountants who prepared the returns is that the Debtor improperly claimed one-half of the mortgage interest and associated real estate tax deductions, but Daryl Cohen claimed the other one-half when she could have claimed 100%. Thus, the Debtor's tax (and Daryl Cohen's return(s)) would have been subject to an adjustment had the IRS chosen to examine either or both.

The government also called Gregory Valenti, an IRS Revenue Agent who is also a Certified Public Accountant (CPA). Mr. Valenti was familiar with the Debtor's returns and Daryl Cohen's returns for 1989 through 1992 (T.V.C., p. 82). He saw that both had claimed itemized deductions on Schedule A. He testified that when individuals file in a "married filing separate returns" status, individuals can claim standard deductions only if both do so or itemize deductions only if both do so (T.V.C., p. 84). Thus, because the itemized deductions were more beneficial for Ms. Cohen in that time frame, and she chose to itemize to enjoy that benefit, the Debtor was also required to itemize.

Mr. Valenti testified to the standards for claiming a deduction for business use of a home. He testified that only a person who is an actual owner of the home used for business may claim the deduction (T.V.C., p. 85). The court credits his testimony. As a result, the deductions claimed by Debtor for business use of the home were improper.

Had the IRS examined these returns, some adjustment may have been necessary to reverse the deductions improperly claimed by Debtor. The IRS presented no evidence as to the extent of any adjustment.

On cross examination, Mr. Valenti indicated that the transcript of accounts for these returns shows no penalties except a late filing penalty and a penalty for paying insufficient estimated taxes (T.V.C., pp. 89–91). No negligence penalty was assessed because no audit was performed. No fraud penalty has been assessed. He testified that he could not state what if any tax consequences were attributable to the incorrect deductions claimed on Debtor's returns because he had not made any adjustments to the returns (T.V.C., p. 92).

Although it is clear from the testimony that Debtor improperly claimed the mortgage interest and business use of the home

deductions, the evidence did not establish that he acted with fraudulent intent or that he willfully evaded payment of his tax liability for the years in question. The evidence clearly showed that Debtor did not meet with the accountants who prepared his returns. Rather, his wife provided the accountants with all the information used to compile the returns. Debtor's testimony that he signed the returns without reading them is entirely consistent with Debtor's conduct in running his handyman business, and is credited by the court. The evidence established that Debtor reported his tax liabilities but had an inability to pay them.

Therefore, the IRS has failed to meet its burden of proof by preponderate evidence on its contention that the tax liabilities are non-dischargeable due to the improper deductions. Debtor's testimony that he did not willfully or intentionally claim improper deductions is accepted as credible by the court. Debtor signed returns that had been prepared by accountants from information furnished to them by his wife. He neither provided incorrect information concerning the deductions to the accountants nor comprehended its significance on his returns.

■ II. The government's second contention is that although the Debtor reported the income he received and attached his W–2s and other required proofs of income, nonetheless the Debtor under-reported income. The government's theory is that the Debtor did not claim sufficient income from the business in the applicable years. The IRS' evidence on this issue involved income Debtor received in years *subsequent* to those in question. Beginning in 1993, Debtor started work as an employee of a corporation owned by his wife. Debtor admitted that one reason he kept his income as an employee low was so that his child support obligation would not be in-

creased (T.V.C., p. 26). Daryl Cohen admitted that one reason she and Debtor filed separate returns was so that the state court would not have access to records of her income in assessing Debtor's child support obligation (T.V.C., pp. 36, 37).

The IRS cites several cases in its argument that Debtor, under the instant facts, should be found to have acted with a fraudulent intent, and, therefore, the taxes owed should be held nondischargeable. *Moore v. United States,* 360 F.2d 353 (4th Cir.1965), *cert. den.,* 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967), however, is clearly distinguishable from the instant case. In the *Moore* case, the issue presented was whether a criminal conviction for federal income tax evasion collaterally estops the issue of fraud in a later civil proceeding over a fraud penalty. *Moore,* 360 F.2d at 354. In *Moore,* the taxpayer's wife was not a party in the criminal prosecution. The court found that she was not estopped from litigating the taxpayer's fraud in a civil suit seeking a refund for overpayment of income taxes. Neither in *Moore,* nor in *Stoltzfus v. United States,* 398 F.2d 1002 (3d Cir. 1968), *cert. den.,* 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969), was any bankruptcy issue raised. In *Stoltzfus,* a case that involved a refund of a civil fraud penalty, there was also a conviction of criminal fraud, established by proof beyond a reasonable doubt. In this case, Debtor has never been charged, let alone convicted, of criminal conduct regarding these returns. Although the taxpayer in *Stoltzfus* was also relatively uneducated, unlike Debtor here, he had substantial business experience including negotiation of contracts with federal and state governments.

The IRS also cites to *In re Harris,* 49 B.R. 223 (Bankr.W.D.Va.1985), modified on other grounds, 59 B.R. 545 (Bankr.

W.D.Va.1986). In that case the bankruptcy court found that the Debtor was a willful evader as to some of the claims advanced by the IRS. The IRS contends that Debtor here should likewise be found so. Harris' allegedly due but unpaid taxes sought to be determined nondischargeable arose from unreported income from embezzled funds he had taken from an employer. Here, the IRS alleges no criminal misconduct or unreported, realized income received by Debtor.[4] The *Harris* facts are dissimilar to the instant ones.[5]

The United States Supreme Court enunciated in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the burden of proof for exceptions to bankruptcy discharge is the "preponderance" standard. More specifically and more recently, the Third Circuit Court of Appeals, in *In re Fegeley*, 118 F.3d 979 (3d Cir.1997), determined that it is the taxing authority's burden to establish the evidence toward nondischargeability where the exception sought is the one outlined in § 523(a)(1)(C). Additionally, *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 17, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), holds that "bankruptcy does not alter the burden [of proof on a tax claim] imposed by the substantive law." *Raleigh* dealt with a corporate officer's liability for a "responsible person" penalty when a corporation failed to pay use tax to the state. It held that the burden of proof was not altered from what it would have been outside the bankruptcy simply because the officer had filed for bankruptcy relief. The Fifth Circuit Court of Appeals has held that the burden of proving one of the § 6501(c) exceptions to a three-year state of limitations is on the government. That is, the presumption that the IRS' deficiency determination is correct is not sufficient to establish fraud by a taxpayer. The government must introduce evidence to establish fraud. *Payne v. C.I.R.*, 224 F.3d 415, 420 (5th Cir.2000).

Here, the government's only evidence concerning the correct amount of income that the Debtor allegedly should have claimed in tax years 1989 through 1992 through his sole proprietorship was based on Debtor's employment in 1993 and following years through a corporation owned by his wife. Debtor's apparently successful attempt to prevent paying child support from 1993 forward due to this maneuver of keeping his salary through the corporation low is anything but salutary. However, it does not prove intent to defeat or evade a tax.[6] The evidence of subsequent conduct where Debtor's circumstances changed from operating his own sole proprietorship from 1989–1992 to becoming an employee of a corporation thereafter does not prove that Debtor willfully evaded or defeated payment of a tax.

The IRS argues that Debtor's "bad act" of "keeping his income low" while employed in 1993 and subsequent years es-

---

4. The IRS did not argue imputed income, merely that the corporation failed to pay Debtor a large enough wage based on his services.

5. In *Harris* (a chapter 13), debtor's tax obligation regarding embezzled funds and fictitious exemptions were held nondischargeable. In its initial opinion, the bankruptcy court said the portion of the IRS claim for taxes related to embezzled funds had been discharged in debtor's prior chapter 7. On re-

consideration, the bankruptcy court reversed itself on this point and held that part of the IRS's claim had *not* been discharged.

6. Debtor's former wife and children may have actions against Debtor under, *inter alia*, 11 U.S.C. § 523(a)(5), and/or a claim for retroactive support, neither of which is barred by the automatic stay, 11 U.S.C. § 362(b)(2)(A)(ii). The Chapter 7 Trustee will be directed to provide a copy of this opinion to Debtor's former wife.

tablishes that he under-reported income in earlier years when he operated his own business. This effort twists the concept of "prior bad acts" evidence under F.R.E. 404(b) and misses its mark.

The IRS cites the *Fegeley* case for the proposition that the willfulness exception to dischargeability must be shown by both a mental state element and a conduct element but it offered no evidence to show that Debtor's mental state included intent to evade a tax. *Fegeley* indicated that Debtor must have a duty, which he knows, to file a tax return, must voluntarily fail to file and must have the financial ability to pay the tax. *Fegeley*, 118 F.3d at 984. In this case, the evidence established that Debtor filed his returns but didn't pay the entire tax liability. Debtor's intent was not to defeat payment of a tax but to limit, if not evade, payment of child support. The IRS also cites *Dalton v. IRS*, 77 F.3d 1297 (10th Cir.1996), to say that willfulness may be inferred from conduct; however, the conduct of the Debtor in that case was concealment of ownership of assets such as a condominium and an oil reclamation company which he helped to organize. Here, Debtor has not concealed assets or income from the IRS. Debtor's nonpayment of his taxes, although relevant, is not of itself sufficient to support a finding of nondischargeability. The IRS disapproves of the corporation's allocation of wages to Debtor and Daryl Cohen but has failed to prove any loss of tax revenue due to that allocation. Debtor reported to the IRS what he was paid by the corporation. Indeed, the tax years in question do not even reach the years Debtor was employed by the corporation.

Additionally, the IRS cites *In the Matter of Birkenstock*, 87 F.3d 947 (7th Cir.1996); *In the Matter of Bruner*, 55 F.3d 195 (5th Cir.1995); and *In re Toti*, 24 F.3d 806 (6th Cir.), *cert. den.*, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994), to persuade us that the threshold for willfully attempting to evade or defeat payment of taxes is low. All of those cases are significantly dissimilar to the facts established at this trial. Debtor/Mr. Birkenstock had a prior criminal conviction for failure to file tax returns for four consecutive years (1980–1983). He used a formula to reduce his income from "pseudo dollars" to what he calculated his income to be by a gold standard. At issue was whether Mrs. Birkenstock should be discharged of her joint tax liability with her husband as reflected on their joint 1977–1979 tax returns. The court refused to draw the inference that Mrs. Birkenstock deliberately attempted to further any under-reporting of income from 1977–1979 merely because she knew that her husband had a duty to file returns in 1980–1983, years in which he earned income. The government failed to prove that she willfully attempted to evade the 1977–1979 taxes. Mrs. Birkenstock, not unlike Mr. Frosch, testified that she did not take an active role in her spouse's business affairs but merely signed the tax returns as presented to her. Mrs. Birkenstock was discharged.

The Bruners filed no tax returns at all for eight years and paid no taxes although they made substantial deposits to a bank account and had substantial expenditures. The bankruptcy court held that liabilities for five of the years were nondischargeable and the appeals court affirmed (on appeal only four of the years were at issue). Debtor Toti did not file returns for seven years and was convicted, through guilty pleas, of tax evasion. At 149 B.R. 834, the *Toti* Court, like the *Bruner* Court, found that there is no requirement of an affirmative act or commission for purposes of § 523(a)(1)(C). In other words, the definition of "wilfully attempted to evade" is the same as that in civil tax cases, *i.e.*, voluntary, conscious and intentional. *Toti* actu-

ally said that for § 523(a)(C) purposes "There is no requirement of an affirmative act or commission...." 149 B.R. at 834. The definition of "willfully attempted to evade" is that in civil tax cases—voluntary, conscious and intentional. § 523(a)(1)(C).

The court finds the information presented by the IRS to be insufficient with respect to its assertion that Debtor underreported income in 1989 through 1992. In those years, Debtor operated as a sole proprietor, not as an employee of a corporation. The IRS has introduced no evidence that Debtor earned more through the proprietorship than he reported. The IRS asks for an inference that the Debtor *should* have earned more without producing a single witness who paid Debtor or any document to show that what Debtor reported was different from what he received. The IRS has failed to prove the Debtor *actually* earned more or that he failed to report his true income for the years at issue in this case.

For the reasons stated above, the court finds that the IRS has not met its burden of proof. The credible evidence substantiated that any errors on Debtor's personal income tax returns for the years 1989 through 1992 were negligent mistakes, rather than the result of fraudulent intent or a willful effort to evade or defeat payment of taxes due. Therefore, the liabilities are dischargeable.

An appropriate order will be entered.

### ORDER

And now, to-wit, this **10th** day of **April, 2001,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED AND DECREED** that the Debtor's federal income tax liabilities for the years 1989, 1990, 1991, and 1992 are **DISCHARGEABLE** under 11 U.S.C. § 523(a)(1)(C).

The Chapter 7 Trustee shall serve a copy of this Opinion and Order on Debtor's former spouse and file proof of service within ten (10) days hereof.