In re Scott D. KIDD, Debtor.

Scott D. KIDD, Plaintiff,

v.

CLERMONT COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, Defendant.

Bankruptcy No. 94–13325.
Adv. No. 94–1133.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Feb. 14, 1995.

Richard D. Nelson, Cincinnati, OH, for plaintiff.

Michael J. Finney, Batavia, OH, for defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Before the court is a complaint by a Chapter 7 debtor to determine the dischargeability of debt pursuant to 11 U.S.C. § 523(a)(5). The parties submitted this matter for decision by the court based upon an agreed stipulation of fact and legal memoranda.[1]

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(I).

Based on the agreed stipulation and the evidence submitted to the court, we find the following facts. Jessica Louise Kidd was born to plaintiff Scott DeWayne Kidd and Rhonda Barger on March 2, 1989. Kidd and Barger were not married. At the time of Jessica's birth, Barger was receiving public assistance from the Ohio Department of Human Services ("ODH"). Barger's receipt of public assistance operated as an automatic assignment of her rights to medical support from Kidd pursuant to § 5101.59 of the Ohio Revised Code. ODH paid certain medical expenses associated with Barger's pregnancy and Jessica's birth. Kidd was ordered to reimburse ODH $2,000 for those previously paid medical expenses, pursuant to a judgment rendered by the Clermont County Court of Common Pleas on April 25, 1993.

On August 25, 1994, defendant Clermont County Child Support Enforcement Agency ("CSEA"), which was charged with administering the Common Pleas Court's order, sent Kidd ADVANCE NOTICE TO OBLIGOR OF DEFAULT AND POTENTIAL ACTION, declaring Kidd in default of a support order and claiming that $2,649.98 was due and owing from Kidd. Of the amount owing, $2,000.00 was attributable to the above described medical expenses. Barger is listed as Obligee on the notice, but the $2,000.00, if collected, will be retained by the ODH, and will not be distributed to Barger or Jessica.

Kidd filed a petition in bankruptcy on September 12, 1994. In the complaint now before the court, Kidd requests a determination that the $2,000.00 owing for past medical expenses is subject to discharge. He does not dispute that the balance of the amounts owing are nondischargeable child support obligations.

Section 523(a)(5) provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

In deciding whether the $2,000.00 debt to CSEA is subject to discharge under the statute, we must consider whether the debt is a child support obligation, and, if so, whether it falls within the exception to nondischargeable child support debt set forth in § 523(a)(5)(A).

---

1. Defendant's memorandum originally was filed in support of a motion for summary judgment. The parties have agreed for the court to regard defendant's motion for summary judgment and memorandum in support as its trial memorandum.

Whether a debt constitutes support is determined according to federal bankruptcy law, not state law. *In re Singer*, 18 B.R. 782, 784 (Bankr.S.D.Ohio 1982), *aff'd*, 787 F.2d 1033 (6th Cir.1986). CSEA, in its trial memorandum, argues that the $2,000.00 debt is a nondischargeable child support obligation, applying the test set forth by the Sixth Circuit in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). *Calhoun* requires a bankruptcy court to consider four elements in determining whether certain support obligations are nondischargeable. The court must find that (1) the parties intended to create an obligation for support; (2) the obligation has the effect of providing necessary support; (3) the amount of support is not manifestly unreasonable; and (4) to the extent the obligation is unreasonable, the amount exceeding the debtor's ability to repay is subject to discharge. *Id.* at 1109–10.

The Sixth Circuit has cautioned that bankruptcy courts have applied *Calhoun* more broadly than it intended. The court explained in *In re Fitzgerald*, 9 F.3d 517 (6th Cir.1993), that the *Calhoun* test applies to determine if an obligation is in the nature of support under § 523(a)(5) when the payment is not designated as support in the applicable court order; the "present needs" test of *Calhoun* does not apply to obligations expressly denominated as alimony or support.

In light of the court's clarification in *Fitzgerald*, we find that the *Calhoun* test does not apply to the present controversy. Unlike *Calhoun*, the adversary proceeding presently before this court does not involve an obligation to pay alimony pursuant to a divorce decree. This proceeding involves an order that was entered for the sole purpose of designating the rights and obligations of unmarried parents with respect to their minor child. The order addressed the parties' respective obligations for future child support and past medical expenses incurred during Barger's pregnancy and the birth of Jessica. *Calhoun* therefore is not applicable to the present facts.

Courts have held that an obligation for medical expenses related to pregnancy and the birth of a child constitutes a debt owed to the child for support. *See In re Seibert*, 914 F.2d 102 (7th Cir.1990); *In re Wilson*, 109 B.R. 283, 284 (Bankr.S.D.Ohio 1989). *But see In re Brown*, 43 B.R. 613 (Bankr.M.D.Tenn.1984). Kidd contends, however, that because the entry ordering reimbursement grants judgment for CSEA, Kidd's payment obligation does not involve rights actually owed to Barger or Jessica. Kidd cites *Monsanto Indus. Chemicals, Inc.*, 161 B.R. 385 (E.D.Mich.1993), in support of his contention that the $2,000.00 at issue is subject to discharge because it is a matter of subrogation rather than assignment.

Kidd's reliance on *Monsanto* is misplaced. The court in *Monsanto* held that child support obligations that were payable by defendant debtor to a third party as reimbursement for previously advanced support payments were in the nature of subrogation and therefore *not* dischargeable under the statute. *Id.* at 388. Section 523(a)(5), the court said, should not be construed so narrowly as to require that support payments be made directly to the spouse or child. The fact that payments are made to a third party does not change the character of those payments as support; otherwise, explained the court, implementing third party procedures that are necessary to enforce support payment obligations would necessarily render support debts nondischargeable, a result not intended by Congress. *Id.* at 387.

Our reading of *Monsanto* is supported by the legislative history of § 523(a)(5)(A). That provision as it stands today has evolved since the Bankruptcy Code originally became effective in 1979. As originally enacted, the Bankruptcy Code provided for the discharge of all assigned support obligations under § 523(a)(5)(A). It also repealed the provision of the Social Security Act that had excepted certain assigned support debts from discharge in bankruptcy, so that only payments owed directly to the spouse or child were nondischargeable. S.Rep. No. 598, 95th Cong., 2d Sess. 79 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

In 1981, however, § 523(a)(5) was amended to except from discharge child support obligations assigned to a state pursuant to

§ 402(a)(26) of the Social Security Act. At the same time, the provision of the Social Security Act that excepted such assigned debts from discharge in bankruptcy was reinstated. Congress explained that "a parent's obligation to support his child is not one that should be allowed to be discharged by filing for bankruptcy, and that a child support obligation assigned to a State as a condition of AFDC eligibility should not be subject to termination in that way." S.Rep. No. 139, 97th Cong., 1st Sess. 523 (1980); H.R.Rep. No. 208, 97th Cong., 1st Sess. 986 (1980), *reprinted in* 1981 U.S.C.C.A.N. 396, 789, 790. *See also In re Morris,* 139 B.R. 17, 19 (Bankr.S.D.Cal.1992) (Congress did not intend for county's reimbursement claim against debtor for child support to be discharged in bankruptcy); *In re Jones,* 94 B.R. 99, 102 (Bankr.N.D.Ohio 1988) (debt to public agency for child support pursuant to judgment entered in favor of agency is nondischargeable, in furtherance of Congress' goal to except all legitimate support debts from discharge).

The assignment exception was expanded in 1984 to include "any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State." Pub.L. No. 98–353, § 454(b), 98 Stat. 375 (1984). The parties have stipulated that, upon her receipt of public assistance, Barger automatically assigned to the State of Ohio her rights to medical support from Kidd.

Based upon the foregoing, we hold that Kidd is not entitled to the relief sought in the complaint, and the $2,000.00 owing for payment of past medical expenses is not dischargeable.