**In re Keith HUTCHISON, Debtor.**

**Keith Hutchison, Plaintiff,**

v.

**Melissa Birmingham, Defendant.**

**Bankruptcy No. 00–32321.
Adversary No. 01–3026.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Dec. 7, 2001.

Francis A. Krcmarik, Flint, MI, for Plaintiff.

Barry Wolf, Flint, MI, for Defendant.

### OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Chief Judge.

#### Introduction

In this case, the Court holds that a debt for child support arises upon the birth of the child and that the fact that no court had yet ordered the debtor to support the child does not take the debt outside the scope of 11 U.S.C. § 523(a)(5).

In the latter half of 1998, Melissa Birmingham filed a complaint in Genesee County Circuit Court against Keith Hutchison, alleging that she was Hutchison's "illegitimate" child. Exhibit 1 of Defendant's Response at ¶ 13 (This is a copy of the complaint, which will hereafter be referred to as the "Paternity Complaint.") Birmingham, who was born on April 26, 1980, *see id.* at ¶ 9, asked the court to "find that [Hutchison] . . . is her father and that . . . [he] breached his common law duty to financially support and care for" her. *Id.* at p. 3. She also asked that she be

"award[ed] . . . an amount in excess of . . . $25,000.00," *id.*, a sum which she characterized as representing the "damages" that she incurred "as a direct and proximate result of [Hutchison's] . . . breach." *Id.* at ¶ 18.

On February 25, 1999, the Genesee County Circuit Court entered an order declaring that Hutchison is Birmingham's "biological father." Stipulated Order of Filiation (Exhibit 1 of Plaintiff's Brief). Hutchison filed for chapter 7 bankruptcy relief on November 30th of the following year. He did not schedule Birmingham as a creditor, although he did list as "[p]ending" the suit that she had commenced against him.

The Debtor was granted a discharge on March 16, 2001. A few days before, on March 12, 2001, he commenced this adversary proceeding against Birmingham. The Plaintiff alleges "[t]hat [the] Defendant has claimed a common law right to child support in excess of . . . $25,000.00." Complaint at ¶ 5. He seeks a determination that this "claim . . . is . . . discharged." *Id.* at p. 2.

In responding to the Debtor's complaint, the Defendant indicated that in the state-court action she had been seeking an "award [of] damages in the form of unpaid child support," and asserted "[t]hat any future judgment in [such action] . . . would not be dischargeable." Defendant's Corrected Response at ¶¶ 2 & 8. Accordingly,

she asked that the Court "lift[ ] the stay" so that she can continue litigation in state court. *Id.* at p. 2.

The Court ordered the parties to "submit their briefs on cross-motions for summary judgment." Scheduling Order (A.P. Docket # 13). They have done so and, for the reasons which follow, the Defendant's motion will be granted.

## Discussion

Section 523(a) of the Bankruptcy Code enumerates those debts which are outside the scope of a debtor's discharge. The Defendant relies on sub-paragraph (5) thereof, which states in pertinent part:

> A discharge . . . does not discharge an individual debtor from any debt . . . to a . . . child of the debtor, for . . . support of such . . . child, in connection with a[n] . . . order of a court of record [1] . . ., but not to the extent that
>
> . . .
>
> (B) such debt includes a liability designated as . . . support, unless such liability is actually in the nature of . . . support[.]

11 U.S.C. § 523(a)(5). Mindful of this provision, one issue raised by the present dispute is whether the claim asserted by the Defendant—even if ultimately vindicated in state court—would in fact be "in the nature of support." A second question

---

1. For simplicity, we will focus in this opinion on court-ordered support. We recognize, however, that § 523(a)(5) encompasses other mechanisms whereby a child-support obligation can be imposed under state law. *See* 11 U.S.C. § 523(a)(5); *see also* H.R.Conf.Rep. No. 958, 98th Cong., 2d Sess. (1986), at 47–48 (explaining that an amendment to § 523(a)(5) was designed to "expand the exception . . . to embrace support determinations involving various types of processes or procedures (e.g. administrative, expedited judicial) and various forms of determinations (e.g. rules, or-

ders)," and observing that "[s]uch determinations may be made by hearing officers or commissioners of agencies, subagencies, departments or courts of counties, municipalities or states—to cite some examples only"); *see generally In re Furlong,* 155 B.R. 517, 518 (Bankr.W.D.Mo.1993) (citing legislative history for the proposition that § 523(a)(5) was amended "to plug the loophole that allowed fathers of children born out of wedlock to escape child support obligations in bankruptcy").

concerns the timing of any relief afforded the Defendant in state court—specifically, whether such relief had to have been obtained prepetition or prior to entry of the Plaintiff's discharge. We will address these issues in reverse order.

### (i) Timing of a Support Order

■ Section 523(a)(5) clearly requires that the support obligation be established by court order. Less clear is whether the absence of such an order dictates a finding that the debt is outside the statute's scope. For reasons to be explained, we conclude that it does not.

■ The automatic stay does not apply to "an action or proceeding for ... the establishment or modification of an order for ... support." 11 U.S.C. § 362(b)(2)(A)(ii). One authority implicitly assumed that this stay exception is limited to support orders that are prospective in application—i.e., that are designed only to meet the child's current and anticipated needs. See 3 Collier on Bankruptcy (15th ed. rev.2001), at ¶ 362.05[2] ("Since the [support] obligation established will be a postpetition claim that is not discharged, there is no reason to delay the nondebtor claimant from establishing or seeking modification of the claim."); see generally 11 U.S.C. § 727(b) ("[A] discharge ... discharges the debtor from all debts that arose" prepetition.); 11 U.S.C. § 101(12) (" '[D]ebt' means liability on a claim[.]"); 11 U.S.C. § 101(5)(A) (" '[C]laim' means ... right to payment, whether or not such right is reduced to judgment[ or] liquidated ....").

The text of § 362(b)(2)(A), however, affords no basis for such a distinction. To the contrary, the fact this provision refers not only to the "commencement" of a support action, but to the "*continuation*" of such an action, 11 U.S.C. § 362(b)(2)(A)(ii) (emphasis added), strongly suggests that it

contemplates support claims arising before the debtor filed for bankruptcy relief.

If the statute were construed as applying only to prospective support orders, moreover, it would be unnecessary: The automatic stay does not apply to judicial proceedings against the debtor which are based on postpetition claims. See 11 U.S.C. § 362(a)(1) (The stay applies to "the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."); see also, e.g., Taylor v. First Fed. Sav. & Loan Ass'n of Monessen, 843 F.2d 153, 154 (3d Cir.1988) ("[T]he automatic stay is not intended to bar proceedings for post-petition claims that could not have been commenced before the [bankruptcy] petition was filed."). The better view, then, is that § 362(b)(2)(A)(ii) encompasses proceedings based on prepetition support claims. See In re Frosch, 261 B.R. 181, 187 n. 6 (Bankr.W.D.Pa.2001); In re Vargason, 260 B.R. 488, 492–93 (Bankr.D.N.D.2001); In re Lewis, 227 B.R. 886, 889 n. 5 (Bankr. W.D.Ark.1998).

Section 362(b)(2)(A) is significant for present purposes, of course, because it renders untenable the proposition that only prepetition support orders are excepted from discharge by § 523(a)(5). See generally United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 121 S.Ct. 1433, 149 L.Ed.2d 401, 417 (2001) ("[S]tatutory construction 'is a holistic endeavor[,]' and ... the meaning of a provision is 'clarified by the remainder of the statutory scheme ... [when] only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.' " (citation omitted)). It would be absurd, after all, for Congress to explicitly

permit a party to engage in postpetition efforts to obtain a support order—the automatic stay notwithstanding—if such order would in any case be void. *See generally* 11 U.S.C. § 524(a)(1) ("A discharge ... voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ...."). The clear negative inference arising from § 362(b)(2)(A), then, is that a debt evidenced by a postpetition support order may be nondischargeable pursuant to § 523(a)(5).

Other statutory provisions point to the same conclusion. Consider the first subparagraph (18) of § 523(a), which states:

A discharge under section 727 ... does not discharge an individual debtor from any debt ... owed under State law to a State ... that is ...

(A) in the nature of support, and

(B) enforceable under part D of title [sic—subchapter] IV of the Social Security Act (42 U.S.C. [§ ] 601 et seq.).

11 U.S.C. § 523(a)(18). *Cf.* 42 U.S.C. § 656(b) ("A debt ... owed under State law to a State .... that is in the nature of support and that is enforceable under this part is not released by a discharge in bankruptcy ....").

By its own terms, this provision does not require that such a debt be reduced to judgment. Nor is any such requirement imposed in connection with part D of the Social Security Act before the state acquires a right of enforcement.[2] Thus a state-owed debt is excepted from discharge regardless of whether it is evidenced by a court order. This being true, it strikes the Court as improbable that Congress intended dischargeability under § 523(a)(5) to turn on when the support order was entered.

The other pertinent statute is § 523(c)(1), which specifies that certain kinds of debts are discharged "unless, on request of the creditor to whom such debt is owed, ... the court determines such debt to be excepted from discharge." 11 U.S.C. § 523(c)(1). The net effect of this statute, in conjunction with the corresponding Bankruptcy Rule, is to establish a deadline for the commencement of nondischargeability complaints based on the kinds of debts specified therein. *See* H.R. Rep. 95–595, 95th Cong., 1st Sess. (1977), at 365, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6321 ("Subsection (c) requires a creditor who is owed a debt that may be expected [sic-excepted] from discharge under paragraph (2), (4), or (6) ... to initiate proceedings in the bankruptcy court for an exception to discharge. If the creditor does not act, the debt is discharged."); F.R.Bankr.P. 4007(c) (In chapters 7, 11 and 12, "[a] complaint to deter-

---

**2.** Pursuant to § 608 of the Social Security Act (subchapter IV, part A), families receiving state-provided, federally funded assistance are required to assign to the state "any rights ... to support from any other person ... which accrue (or have accrued) before the date the family ceases to receive assistance." 42 U.S.C. § 608(a)(3)(A). Section 656 of the act (subchapter IV, part D) provides that "[t]he support rights assigned to the State ... shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be collectible under all applicable State ... processes ...." 42 U.S.C. § 656(a)(1). "The amount of such obligation shall be[,] ... *if there is no court order,* an amount determined by the State ...." 42 U.S.C. § 656(a)(2)(B) (emphasis added). It may often be the case that no order for support is entered until one is obtained by the state after it has commenced support payments. *See, e.g., In re Leibowitz,* 217 F.3d 799, 800–01 (9th Cir.2000) (wherein the state court entered judgment requiring Leibowitz to "reimburse" a county government for child-support payments made by the county to his former wife).

mine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."); *see generally* 4 Collier on Bankruptcy (15th ed. rev.2001), at ¶ 523.26[1] ("Following the general design of the Code to leave most procedure to rules, section 523(c)(1) fixes no time limit within which the creditor must initiate the [dischargeability] proceeding . . . .").

■ Debts of the kind described in § 523(a)(5) are not among those listed in § 523(c)(1). Thus there is no deadline by which a creditor must seek a determination that the debt owed to her is excepted from discharge by § 523(a)(5). *See* F.R.Bankr.P. 4007(b) ("A [dischargeability] complaint other than under § 523(c) may be filed at any time. A case may be reopened . . . for the purpose of filing [such] a complaint . . . ."); *see also, e.g., In re Hopson,* 216 B.R. 297, 299 (Bankr. N.D.Ga.1997) ("[N]either the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure contain a deadline for filing complaints to determine dischargeability under § 523(a)(5)."). The fact that a § 523(a)(5) action may be brought at any time logically suggests that the support order upon which such action is based can be entered at any time.

The foregoing considerations notwithstanding, a superficially appealing argument could be made that the debtor's discharge imposes what amounts to a "cut-off" date for entry of a support order. The reasoning goes like this: (i) While the automatic stay remains in effect, § 362(b)(2)(A)(ii) permits a creditor to obtain a support order; (ii) Upon entry of the discharge, the automatic stay which protects the debtor is replaced by an injunction, *see* 11 U.S.C. §§ 362(c)(2)(C), 524(a)(2); (iii) The window of opportunity afforded creditors by § 362(b)(2)(A)(ii) is

closed, because the injunction applies to the "continuation of an action . . . to collect any [discharged] . . . debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

■ The flaw in this argument is the proposition that § 524(a)(2) precludes a creditor from obtaining a support order. As a general matter, any assertion that the discharge injunction is in some respect broader than the automatic stay is one which should be viewed with skepticism. *See In re Henry,* 266 B.R. 457, 474 (Bankr. C.D.Cal.2001) ("[T]he discharge injunction is more selective" than the automatic stay.); *In re Peterson,* 118 B.R. 801, 802 n. 3 (Bankr.D.N.M.1990) ("The discharge injunction is narrower in breadth than the automatic stay . . . ."). And as will be explained, this case is no exception to the rule.

Section 524(a) relates only to "discharged" debts. 11 U.S.C. § 524(a)(1). A debt fails to qualify as such if it is determined to be nondischargeable under § 523(a). *See* 11 U.S.C. § 727(b) ("*Except as provided in section 523* of this title, a discharge . . . discharges the debtor from all debts . . . .*" (emphasis added)); 11 U.S.C. § 523(a) (enumerating those kinds of debts to which "[a] discharge under section 727" does not apply).

Since § 524(a) is limited in scope to *dischargeable* debts, the argument that it precludes any attempt to obtain a support order is circular: The debt is dischargeable because it is too late to obtain a support order, and it is too late to obtain such an order because the debt is dischargeable.

Of course, the converse of this argument can likewise be reduced to a tautology: The injunction does not apply because the debt is nondischargeable, and the debt is nondischargeable because the injunction

does not apply. But this simply underscores the more basic point, which is that § 524(a) provides no guidance with respect to the question of whether a support order must be entered before the injunction arising thereunder comes into effect. *See, e.g., In re Ellsworth,* 158 B.R. 856, 858 (M.D.Fla.1993) ("Since the debt in this case is nondischargeable, no further action is necessary by the creditor, and the creditor is not prohibited by the permanent injunction, created in Section 524(a)(2), from collecting debts owed it."). Accordingly, we are unpersuaded by the discharge-as-deadline argument.

The Plaintiff cited no authority or rationale for the proposition that § 523(a)(5) requires that the support order be entered prepetition or prior to some other Code-related event. We therefore reject that proposition.

In this case, of course, the fact remains that there is as yet no court order—a deficiency which the Defendant hopes to remedy by obtaining a lift of the automatic stay. Since the Debtor is no longer protected by the stay, *see* 11 U.S.C. § 362(c)(2)(C), that relief is unnecessary. Indeed, if the order sought by the Defendant in state court would in fact constitute a support order, relief from the stay was *never* needed. *See* 11 U.S.C. § 362(b)(2)(A)(ii).

But while it is obvious that the stay is no longer an obstacle for the Defendant (assuming it ever was), the Plaintiff's discharge produced a new potential barrier to litigation in state court—the injunction imposed by § 524(a)(2). Having rejected the proposition that the absence of a court order is fatal to the Defendant's claim of nondischargeability, it is this injunction which eliminates any doubt as to whether there remains a justiciable controversy between the parties. This is so because, were it not for the question of whether the state-court action is enjoined, the case at bar would at least arguably be premature, inasmuch as the state court has yet to (and may not) render judgment in Birmingham's favor. *See generally, e.g., In re Bean,* 252 F.3d 113, 117–18 (2d Cir.2001) ("The ripeness doctrine requires that there be a 'real, substantial controversy between parties' involving a 'dispute definite and concrete.' . . . These requirements are intended to prevent adjudication of issues that may never arise." (citation omitted)); *In re Amoskeag Bank Shares,* 239 B.R. 653, 658–59 (D.N.H.1998) ("Ripeness . . . is a blend of constitutional and prudential requirements rooted in Article III's case or controversy requirement. The ripeness requirement prevents courts from issuing advisory opinions or deciding cases based upon hypothetical facts.").

The issue here, in other words, is whether § 524(a)(2) prevents the Defendant from prosecuting her state-court action. That issue, in turn, depends on whether the alleged debt is dischargeable.

In arguing that it is, the Plaintiff asserts that any liability to the Defendant that might be imposed in state court would not be for support. We address that argument in the subsection which follows.

### (ii) The Nature of Support

■ Federal law determines whether an obligation is in the nature of child support. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), at 364; *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *see also, e.g., In re Swate,* 99 F.3d 1282, 1286 (5th Cir.1996). The Code defines the phrase " 'debt for child support' [as] mean[ing] a debt of a kind specified in section 523(a)(5) . . . for *maintenance* or *support* of a child of the debtor." 11 U.S.C. § 101(12A) (emphasis added). While not further defined in the Code, the meaning of the highlighted terms is no great mystery. "Mainte-

nance" is the "act of maintaining." The Random House College Dictionary (rev. ed.1980). To "maintain" is "to keep in a specified state [or] ... position." *Id.* The word "support" can carry essentially the same, or a somewhat more austere connotation. *Compare id.* ("Support," as a noun, means "maintenance, as of a person or family.") *with id.* (To "support" is "to provide (a person, family, etc.) with the means of sustaining life.").

■ In deciding whether a debt is in the nature of support, the court must focus on when the debt was created. *See Swate,* 99 F.3d at 1286 ("Whether a particular obligation constitutes ... support ... is determined by examining the nature of the debt at the time it was created." (citations and internal quotation marks deleted)). If the debt's "conception" is viewed as the point in time when the support order is entered, as *Swate* implicitly assumed it should be, *see id.,* then the debt owed to the Defendant is *not* in the nature of support. After all, assuming she were to prevail in state court, the monetary relief afforded her would in no way be designed to provide her with "support" or "maintenance." To the contrary, her present circumstances are utterly irrelevant to the theory upon which the Defendant is proceeding in state court: Rather, the gist of her cause of action is that the Plaintiff must reimburse her for past harm. *See* Paternity Complaint at ¶ 17 (alleging that Birmingham "was deprived of financial resources that would have otherwise been provided to her, either directly or derivatively, through child support payments"). A money judgment based on such a theory cannot properly be characterized as "maintenance" or "support." *See In re Sorah,* 163 F.3d 397, 401 (6th Cir.1998) (indicating that a monetary obligation which would not terminate "upon such events as [the obligee's] death, remarriage, or eligibility for Social Securi-

ty benefits" is inconsistent with a support obligation); *In re Sternberg,* 85 F.3d 1400, 1405 (9th Cir.1996) (implying that a monetary obligation which calls for a lump sum payment rather than installment payments is inconsistent with a support obligation); *In re Singer,* 787 F.2d 1033, 1035 (6th Cir.1986) (indicating that a monetary obligation which is imposed without regard to "the relative incomes of the parties" or whether "the recipient ... needs support" is inconsistent with a support obligation); *cf. In re Flint,* 231 B.R. 611, 616–17 (Bankr.E.D.Mich.), *rev'd,* 238 B.R. 676 (E.D.Mich.1999) (For purposes of 11 U.S.C. § 523(a)(8), an obligation which is incurred in order to pay off an educational loan is not itself an educational loan.).

It is true that the alleged damages sustained by the Defendant involve child support or, more specifically, the failure to provide same. That being the case, the damage award is clearly "related to" child support. Several courts, moreover, have adopted the viewpoint that this sort of nexus is sufficient for § 523(a) purposes.

A prominent example is *In re Leibowitz,* 217 F.3d 799 (9th Cir.2000). Leibowitz's former wife had received child-support payments from Orange County, California, and the county then obtained a state-court judgment requiring Leibowitz to "reimburse" it for these payments. *Id.* at 800–01. Leibowitz later filed for chapter 7 bankruptcy relief, and sought a determination that the "reimbursement debt" owed to the county was discharged, based in part on his argument that the debt was not "in the nature of support." *Id. See generally* 11 U.S.C. § 523(a)(18) (quoted *supra* p. 434).

The Ninth Circuit rejected this argument. *Leibowitz,* 217 F.3d at 804. According to the court, "[t]he legal question" presented was "whether the *basis* of the debt benefitted the children." *Id.* at 803

(emphasis added). Because the county's support payments had "benefitted [Leibowitz's] ... former wife and children," his debt to the county "qualifie[d] ... as one 'in the nature of support'" for purposes of § 523(a)(18). *Id. Leibowitz* therefore stands for the proposition that a claim is in the nature of child support if it is based on a right of reimbursement for a claim which is in the nature of child support. *See also In re Coker*, 232 B.R. 182, 186 (C.D.Cal.1998) (Section "523(a)(18) ... provides for nondischargeability for debts arising from a state's efforts to obtain reimbursement for welfare payments made to for [sic] either child or spousal support ...."); *In re Pitts*, 262 B.R. 482, 498 (Bankr.W.D.Mo.2001) ("[T]he Court agrees with the reasoning of the Ninth Circuit Court of Appeals in *Leibowitz* ...."); *In re Leibowitz*, 218 B.R. 96, 98 (Bankr. C.D.Cal.1998), *aff'd*, 230 B.R. 392 (9th Cir. BAP 1999), *aff'd*, 217 F.3d 799 (9th Cir. 2000) ("The fact that the debt now takes the form of reimbursement to the County does not alter the original purpose of the public assistance which was paid out by the County. That purpose was the support of the debtor's minor children. Thus, the underlying debt is 'in the nature of support.'"); *cf. In re Flint*, 238 B.R. 676, 680–81 (E.D.Mich.1999) (For purposes of 11 U.S.C. § 523(a)(8), an obligation which is incurred in order to pay off an educational loan is itself an educational loan.).

As suggested earlier, *Leibowitz's* reading of § 523(a)(18) is plausible. But it is indisputably an *expansive* reading—one which broadens the reach of § 523(a)'s "nature of support" language beyond the boundaries suggested by a strict application of that statutory phrase. After all, even the Ninth Circuit conceded (albeit only implicitly) that any money paid to the county by Leibowitz was not destined to provide support for his children. *See Leibowitz*, 217 F.3d at 803 ("The legal question is *not* whether repayment of the debt will benefit the children ....") (emphasis added).

■ Of course, a liberal construction of a statute is not necessarily a wrong construction. The Supreme Court, however, has instructed that "exceptions to discharge 'should be confined to those plainly expressed.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).[3] *See also In re Meyers*, 196 F.3d 622, 624 (6th Cir.1999) ("As a general matter, exceptions to discharge are narrowly construed ...."). Sections 523(a)(5) and

---

3. The statute at issue in *Geiger* was § 523(a)(6), which excepts from discharge debts for "willful and malicious injury." 11 U.S.C. § 523(a)(6). The Court was faced with the question of whether this provision requires an intentional injury, or merely an intentional act which causes injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court rejected the latter, "more encompassing interpretation," deeming it "incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Id.* at 62, 118 S.Ct. 974 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). Thus the Court did not merely give lip service to the narrow-construction rule; rather, the rule informed the Court's determination as to the "compass" of § 523(a)(6). *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. *See also Gleason*, 236 U.S. at 558, 35 S.Ct. 287 (answering in the negative "[t]he question ... [of] whether the professional services of an attorney ... are property within the meaning of" a pre-Code statute excepting from discharge "'liabilities for obtaining property by false pretenses or false representations'" (quoting the statute)); *see generally In re Watkins*, 90 B.R. 848, 856 (Bankr.E.D.Mich.1988) (The narrow-construction rule "is applicable ... when construing the breadth of a statutory exception to discharge.").

523(a)(18) do not "plainly express" an intention on Congress's part to except from discharge debts which merely relate to support obligations.

■ Perhaps mindful of the tension between *Leibowitz* and the narrow-construction rule, one court indicated that this rule has no application to § 523(a)(5)/(18). *See Pitts,* 262 B.R. at 490 ("[E]xceptions from discharge for spousal and child support deserve a liberal construction ...."); *see also In re Kline,* 65 F.3d 749, 750–51 (8th Cir.1995) (In this case, which was binding upon and cited in *Pitts,* the Eighth Circuit declared that "[a]lthough statutory exceptions to discharge normally are subject to narrow construction, ... exceptions from discharge for spousal and child support deserve a more liberal construction."). We reject this view for several reasons. First, there is nothing in *Geiger* or *Gleason* to suggest that the narrow-construction rule would not apply to § 523(a)(5)/(18).

Consider also the rationale underlying the narrow-construction rule, which is "to promote the central purpose of the discharge: relief for the 'honest but unfortunate debtor.' " *Meyers,* 196 F.3d at 624 (citation and internal quotation marks omitted). Since this rationale applies with equal force to all provisions of § 523(a) (or, at least, all those provisions which are not predicated on the debtor's lack of honesty[4]), we see no justification for ignoring the rule in § 523(a)(5)/(18) cases.

On a more pragmatic level, we could not adopt a liberal-construction rule even if we were otherwise inclined to do so. In *Calhoun, supra,* the Sixth Circuit was called upon to decide whether the "debtor's assumption of joint debts and the undertaking to hold a former spouse harmless as part of a marriage separation agreement constitute[d] support or alimony payments" within the meaning of § 523(a)(5). *Calhoun,* 715 F.2d at 1106. The court noted that "every assumption of a joint loan obligation in a divorce settlement at least indirectly contributes to support. The former spouse is relieved of payments on that debt and thus has funds for other purposes including necessary support. Support in this broad sense results even if the assumption of joint marital debts is actually a division of property." *Id.* at 1108. But the court added that "interpret[ing] § 523 in this broad sense envisages results at odds with the 'fresh start' concept which underlies the Bankruptcy Act." *Id.* at 1109. Thus while not citing the narrow-construction rule, as such, *Calhoun* did for all intents and purposes invoke that rule. *See generally, e.g., In re Krohn,* 886 F.2d 123, 125 (6th Cir.1989) ("One of the primary purposes of bankruptcy is to relieve an honest debtor from the weight of oppressive indebtedness and permit him to start afresh.... A fresh start is afforded through discharge of all or a portion of his debts.").

For these reasons, we hold that the narrow-construction rule has full application in deciding whether a debt is "for ... support of ... [a] child." 11 U.S.C. § 523(a)(5). And in our view, this rule precludes the extension of § 523(a)(5)/(18) to debts which are only related to a child's support.

The Ninth Circuit turned to provisions in part D of subchapter IV of the Social Security Act in justification of its holding. *See Leibowitz,* 217 F.3d at 803–04. But as will be seen, these provisions actually tend to undermine the court's broad reading of § 523(a).

---

**4.** *Gleason* involved a fraud-based exception. *See Gleason,* 236 U.S. at 558–62, 35 S.Ct. 287. Thus it supports the view that even allegedly dishonest debtors are entitled to the benefit of the narrow-construction rule.

The stated objectives of part D include "enforcing the support obligations owed by noncustodial parents to their children . . ., locating noncustodial parents, establishing paternity, obtaining child . . . support, and assuring that assistance in obtaining support will be available . . . to all children . . . for whom such assistance is requested." 42 U.S.C. § 651. Toward that end, part D calls for the establishment of a "Federal Parent Locator Service." 42 U.S.C. § 653(a)(1). This service is charged with the responsibility of "obtain[ing] and transmit[ting] . . . information" to the appropriate authorities which will facilitate the collection of child support. 42 U.S.C. § 653(a)(2). Part D also authorizes the withholding of sums from wages owed federal employees "to enforce the [employee's] legal obligation . . . to provide child support." 42 U.S.C. § 659(a).

Sections 653 and 659 contain expansive definitions of support. The latter states that "[f]or purposes of this section[,] . . . [t]he term 'child support' . . . means amounts required to be paid under a judgment . . . for the support and maintenance of a child . . ., which provides for monetary support . . ., *arrearages* or *reimbursement,* and which may include other related costs and fees, interest and penalties, income withholding, attorney's fees, and other relief." 42 U.S.C. § 659(i)(2) (emphasis added).

Virtually identical language is seen in § 653, the statute which establishes the Parent Locator Service. Subparagraph (p) states that "[a]s used in this part, the term 'support order' means a judgment . . . for the support and maintenance of a child . . ., which provides for monetary support . . ., *arrearages,* or *reimbursement,* and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees, and other re-

lief." 42 U.S.C. § 653(p) (emphasis added).

According to the Ninth Circuit, §§ 653(p) and 659(i)(2)—particularly the highlighted terms thereof—constitute "strong evidence that a debt can qualify as 'in the nature of support' even if the debt provides no current benefits to the child." *Leibowitz,* 217 F.3d at 804. Neither of these provisions, however, purports to specify the kind of obligation which will pass muster under § 523(a)'s "nature of support" standard.

Indeed, part D itself implicitly recognizes that this standard is not coextensive with the "support order" and "child support" definitions set forth in §§ 653(p) and 659(i)(2), respectively. Mirroring § 523(a)(18), part D provides that "[a] debt (as defined in section 101 of Title 11) owed under State law to a State (as defined in such section) . . . *that is in the nature of support* and that is enforceable under this part is not released by a discharge in bankruptcy." 42 U.S.C. § 656(b) (emphasis added).

Had Congress intended to except from discharge any debt evidenced by a "support order," or constituting "child support," as those terms are defined in part D, it would have been simple to so state in § 656(b) (as well as in its Code counterpart, § 523(a)(18)). The fact that § 656(b) makes no cross-reference to § 653(p) or § 659(i)(2) strongly suggests that the definitions contained in the latter statutes have no bearing on the "nature of support" inquiry.

Nor should this lack of correlation be surprising. As indicated, a primary goal of part D is to force deadbeat parents to honor their financial obligations. That being the case, one would expect to see terms like "child support" and "support order" defined broadly, thereby maximiz-

ing the legislation's impact and effectiveness.

In the bankruptcy context, however, competing concerns come into play. One such concern is that the debtor obtain a "fresh start." *See Krohn*, 886 F.2d at 125 (quoted *supra* p. 439). Another consideration is that the debtor's non-exempt assets are likely to be scarce and in great demand. What this means, of course, is that one creditor's recovery may come at another creditor's expense. *Cf. Leibowitz*, 217 F.3d at 803 ("Leibowitz ... argues ... that forcing him to pay the County will not benefit his children because he will then be unable to afford his current child support payments.... [This] argument highlights an unfortunate consequence of the welfare and bankruptcy laws, which is that some parents cannot support their children in the present because they are still paying for past support."). This prospect of non-discharged claims going unpaid, coupled with solicitude for the debtor's "fresh start," offer a perfectly plausible explanation as to why Congress might have chosen not to expansively define "support" for dischargeability purposes. *See generally Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1, 7 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (citations and internal quotations marks omitted)).

■ For these reasons, we reject the contention in *Leibowitz* to the effect that §§ 653(p) and 659(i)(2) demonstrate that § 523(a)'s "nature of support" language is to be broadly construed. The better view is that § 523(a)(5)/(18) excepts from discharge only those debts which are established to provide for a child's support needs. A debt which only "relates to"

such needs does not meet this criterion. Thus a state-court judgment in favor of Birmingham would not be in the nature of support if one accepts the premise that it is the judgment which "creates" the debt she is owed.

■ In our view, however, the notion that the Plaintiff's debt to the Defendant would arise upon entry of a court order is incompatible with the Code. As indicated earlier, a "debt" is simply "liability on a claim." 11 U.S.C. § 101(12). Also as indicated earlier, a "claim" means nothing more than a "right to payment, *whether or not such right is reduced to judgment[ or] liquidated.*" 11 U.S.C. § 101(5)(A) (emphasis added). In light of these criteria, it is obviously incorrect to define the debt owed Birmingham as coming into being if and when she obtains a judgment. *See United States v. Moriarty*, 8 F.3d 329, 334 (6th Cir.1993) ("Under [the Bankruptcy Code's] ... definition [of the term 'claim'], although the United States may be precluded by the applicable statute of limitations from bringing an action for money damages, it continues to have a 'right to payment' against the debtor in this case and thus may enforce that right in other ways."); *United States v. Westley*, No. 98–6054, 2001 WL 302068, at * 9 (6th Cir. Mar.21, 2001) (unpublished) ("The district court held that ... the debt did not exist until the district court entered its order ... holding that a fraudulent conveyance had in fact occurred. We disagree.... The obligation to return the property arose when the fraudulent transfer occurred; *the district court's order ... merely made that obligation enforceable through the courts.*" (emphasis added)). We must therefore look elsewhere in determining when her alleged "right to payment" arose. 11 U.S.C. § 101(5)(A). *See generally* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), at 310, U.S.Code

Cong. & Admin.News 1978, pp. 5963, 6267 ("The terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor."); *Rake v. Wade*, 508 U.S. 464, 474 n. 11, 113 S.Ct. 2187, 124 L.Ed.2d 424 & accompanying text (1993) (implying that "debt" and "claim" are synonymous); *In re First Jersey Sec.*, 180 F.3d 504, 510 (3d Cir.1999) ("[A]s debt is defined as a liability on a claim, it is coextensive with the definition of a claim ...."); *Laws v. United Mo. Bank of Kansas*, 188 B.R. 263, 267 (W.D.Mo.1995), *aff'd*, 98 F.3d 1047 (8th Cir.1996). ("The Bankruptcy Code treats 'debt' as the converse of a 'claim.' "); *In re Kilpatrick*, 160 B.R. 560, 568 n. 6 (Bankr. E.D.Mich.1993) ("[T]he terms 'debt' and 'claim' are essentially interchangeable."). *But see In re Kielisch*, 258 F.3d 315, 323 (4th Cir.2001) ("[A] 'claim' is defined differently under the Bankruptcy Code than a 'debt' .... We believe that the lower courts conflated these two concepts by effectively treating a 'claim' as the equivalent of a 'debt' for purposes of § 502 ....").

The premise of Birmingham's request for damages in the paternity action, as indicated earlier, is that the Plaintiff "breached his common law duty to financially support" her. Paternity Complaint at p. 3. As authority for her contention that such a duty exists, Birmingham relies heavily on *Phinisee v. Rogers*, 229 Mich. App. 547, 582 N.W.2d 852 (1998). *See* Defendant's Brief at pp. 4—7.

That case, which also involved an illegitimate child alleging "breach of a common-law duty to support" her, *Rogers*, 229 Mich.App. at 551, 582 N.W.2d 852, does state that "a common-law right exists for an illegitimate child over age eighteen to bring a suit for support." *Id.* at 556, 582 N.W.2d 852. The support duty itself, however, is apparently derived from statute. *See id.* at 559, 582 N.W.2d 852 ("Plaintiff's right to child support payments is governed by ... [Mich. Comp. Laws § ] 722.3a ....").

Whether statutory in origin or not,[5] the theory behind the support obligation is the same: a child has a right to be supported by her parents. *See, e.g.*, Mich. Comp. Laws § 722.3(1) ("The parents are jointly and severally obligated to support a minor child ...."); *Rogers*, 229 Mich.App. at 559, 582 N.W.2d 852 ("[C]hildren born out of wedlock [are] no less deserving of support than those children born in wedlock." (citation omitted)); *see also Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (per curiam) ("[O]nce a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother."). This right of support, of course, comes into being with the child herself.[6] *See Rogers*, 229 Mich.App. at 559–60, 582 N.W.2d 852 ("A finding of

---

5. The Plaintiff suggested that a support debt grounded in common law is outside the scope of § 523(a)(5). *See* Plaintiff's Brief at pp. 2 & 5; Plaintiff's Response Brief at pp. 2 & 4. He cited no authority for this proposition, nor did he offer any rationale as to why only statute-based debts are excepted from discharge. The Court therefore summarily rejects this interpretation of § 523(a)(5).

6. Since the duty of support is an ongoing obligation, it would be more accurate to say that the corresponding right to support accrues as the child matures. *Cf. In re Mullally*, 56 B.R. 271, 274 (Bankr.N.D.Ill.1985), *aff'd*, 67 B.R. 535 (N.D.Ill.1986) (Under Illinois law, "[a] father's obligation to support his child begins at birth and continues during minority."). For the sake of simplicity, we characterize the genesis of a support right as a discrete event.

paternity certainly contemplates that the finding relates back to the child's birth. If a cause of action for paternity ... is preserved ..., it must be assumed that appropriate damages can be sought, which in a paternity action, of course, means support from the time a child was born."); *cf. In re Kidd,* 177 B.R. 876, 878 (Bankr.S.D.Ohio 1995) (favorably citing cases which "have held that an obligation for medical expenses related to pregnancy and the birth of a child constitutes a debt owed to the child for support"). And while it is rarely liquidated or reduced to judgment, a right to support is nevertheless a "claim"—i.e., a "right to payment." 11 U.S.C. § 101(5)(A). *See In re Pierson,* 47 B.R. 258, 261 (Bankr.D.Neb.1985) ("[U]nder Iowa law, the rights to support accrue on the date of the birth of the child even though the liability for that support is not determined until the conclusion of the trial and any appeals resulting therefrom.").

■ A money judgment could plausibly be characterized as taking the place of the underlying claim for support. *See generally, e.g.,* Restatement, Second, Judgments, § 18, Comment "a" ("When the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it."). That characterization, however, cannot be reconciled with the Code.

As noted earlier, a "claim" is defined without regard to whether it has been "reduced to judgment." 11 U.S.C. § 101(5)(A). Thus the entry of judgment cannot properly be viewed as giving rise to a new "claim," in the bankruptcy sense of that term.

The conclusion that Birmingham's support claim pre-dates entry of a corresponding judgment appears to be at odds with decisions of the Sixth Circuit, wherein the court has focused on the parties' circumstances as they existed at the time of divorce. *See In re Fitzgerald,* 9 F.3d 517, 521 (6th Cir.1993); *Singer,* 787 F.2d at 1035; *Calhoun,* 715 F.2d at 1108—09. Assuming (as we do) that the Sixth Circuit accepts the premise that the nature of the debt *at its inception* is the critical issue for § 523(a)(5) purposes, *see supra* p. 436,[7] this mode of analysis implies that a claim for support originates with the divorce decree. Indeed, the Sixth Circuit uses terminology consistent with that view. *See, e.g., In re McCafferty,* 96 F.3d 192, 195 (6th Cir.1996) ("Where the state court or the parties to the divorce did not intend to *create* an obligation in the nature of support, that obligation cannot qualify for a section 523(a)(5) exemption." (emphasis added)); *Calhoun,* 715 F.2d at 1109 ("[T]he initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to *create* an obli-

7. If it were otherwise, irresponsible parents could discharge support obligations by the simple expedient of failing to make timely payments. *See In re Merrill,* 246 B.R. 906, 919 (Bankr.N.D.Okla.), *aff'd,* 252 B.R. 497 (10th Cir. BAP 2000), *aff'd,* 2001 WL 909157 (10th Cir.2001) (unpublished) ("If ... all any debtor need do with respect to [support] payments owed ... to his or her spouse is to default ... and seek bankruptcy court relief[,] ... § 523(a)(5) [would be] a nullity."); *see also In re Swate,* 99 F.3d 1282, 1286 (5th Cir.1996) ("The circumstances of the parties subsequent to the [debt's creation] ... is irrelevant to th[e] inquiry" into whether the debt

is in the nature of support. (citation omitted)); *In re Fitzgerald,* 9 F.3d 517, 521 (6th Cir. 1993) (holding that the debtor's post-divorce alimony arrearage was nondischargeable, and finding no "need ... [to] decide whether [his ex-wife] ... was or was not working at the time of the divorce since that fact does not change the nature of the payments"); *id.* at 520 (collecting cases in which courts held that "past due [support] obligations [were] nondischargeable," and adding that it had "found no case in which a court discharged past-due obligations that were intended as support by the state court or parties").

gation to provide support." (underscore added)).

However, *Calhoun* and the other cases cited are distinguishable. The Sixth Circuit was confronted with *prospective* support orders—i.e., orders alleged to be based on the present and future support needs of the obligee. In that context, there is no need for a preliminary determination as to whether the support claim arose prior to entry of the order: Even if it did, the logical focus of the court's inquiry would still be the parties' circumstances at the time the support order is entered— if only to verify that the obligation in question is based on a claim for support rather than, say, a division of marital property.[8] *See Fitzgerald,* 9 F.3d at 521 (In *Calhoun,* "it was necessary to determine whether something *not* denominated as support in the divorce decree was really support[.] [H]ere the ... question is whether something denominated as alimony is really alimony and not, for example, a property settlement in disguise."). Indeed, because the obligation to provide support is a continuous one, *see supra* n. 6, it may well be correct to characterize a prospective support claim as arising upon entry of the support order. *See* 3 Collier on Bankruptcy (15th ed. rev.2001), at ¶ 362.05[2] (quoted *supra* p. 433).

In this case, on the other hand, the Defendant is in effect seeking entry of a retroactive order of support. This makes the question of when her claim for support arose outcome-determinative. And as explained *supra* pp. 441–42, the proposition that this claim springs into being only if and when she prevails in state court does not withstand scrutiny.

■ The Sixth Circuit has never ruled, either explicitly or by necessary implication, that a support debt arises upon entry of a court order awarding damages for failure to provide such support. We conclude that it does not. Thus in the context of a retrospective support order, the court's task is not to focus on the parties' financial situation when the order entered. Rather, the court must determine whether the claim upon which the order is based is in the nature of support.[9]

■ In short, the Plaintiff's alleged support obligation was "created" when Birmingham was born. Since this obligation is grounded in state law, *see, e.g., Fitzgerald,* 9 F.3d at 521, and since federal law controls the nature-of-support inquiry, *see supra* p. 436, it is theoretically possible that all or a portion of any damages awarded to Birmingham would not consti-

---

8. No such "verification" would be necessary in this case, since—in contrast to the typical divorce action—Birmingham's state-court action is based exclusively on her child-support claim. *Cf. In re Kidd,* 177 B.R. 876, 878 (Bankr.S.D.Ohio 1995) ("[T]he *Calhoun* test does not apply ... to an order that was entered for the sole purpose of designating the rights and obligations of unmarried parents with respect to their minor child.").

9. Our criticism of *Leibowitz* notwithstanding, the approach we endorse does not mean that the debtor can always obtain a discharge of a debt owed to a state claiming a right of reimbursement. If the support recipient does in fact have support rights to assign (as is apparently not the case under California law prior

to entry of a support order, *see Leibowitz,* 217 F.3d at 802), the state could assert those rights in seeking a determination of nondischargeability. *See* 11 U.S.C. § 523(a)(5)(A) (The exception from discharge applies to "debts assigned pursuant to section 408(a)(3) of the Social Security Act.)" (42 U.S.C. § 608(a)(3)). And if the assignor's claim is in the nature of support, then the debt owed to the state would be excepted from discharge. *See In re Flint,* 231 B.R. 611, 614 (Bankr. E.D.Mich.), *rev'd,* 238 B.R. 676 (E.D.Mich. 1999) (suggesting that an entity that "pays off a[n educational] loan" could prevail under § 523(a)(8) if it obtained an assignment "of the original lender's rights").

tute "support" for § 523(a)(5) purposes. But the Plaintiff did not argue, nor do we see any reason to suppose, that Michigan law is qualitatively different from, or more expansive than, federal law with respect to the nature of support. We therefore assume that the Plaintiff's obligation under Michigan law to support the Defendant is in fact a support obligation within the meaning of § 523(a)(5). *Cf. Fitzgerald,* 9 F.3d at 521 ("Bankruptcy law does not place a restriction on the state courts' ability to award alimony." [10]). The Plaintiff's alleged failure to honor the obligation does not transform it into a "non-support" debt. *See supra* n. 7.

The facts pertinent to resolution of this case are not in dispute. For the reasons stated, an order will enter denying the Plaintiff's motion for summary judg-

ment and granting the Defendant's motion seeking the same relief. The order will declare that the Defendant's claim is non-dischargeable pursuant to § 523(a)(5), and that the injunction in effect by virtue of § 524(a)(2) does not bar the Defendant's prosecution of that claim in Genesee County Circuit Court. The order will further provide that it is without prejudice as to the Plaintiff's right to assert that damages awarded in state court are unreasonably large and therefore dischargeable to the extent of the excess. *See supra* n. 10.[11]

---

**10.** An exception to this rule is recognized by the Sixth Circuit, however. If the debtor can "demonstrate that the [support] obligation is unreasonable in light of [his] ... financial circumstances," then the debt may be discharged "*to the extent* that it exceeds what [he] ... can reasonably be expected to pay." *In re Sorah,* 163 F.3d 397, 402 (6th Cir.1998). The Plaintiff, who asserts through counsel that "[a] damages award" could prove "catastrophic" for him; Plaintiff's Brief at p. 5, can attempt to make such a showing in either this forum or Genesee County Circuit Court. *See, e.g., In re LaCasse,* 238 B.R. 351, 354 (Bankr. W.D.Mich.1999) ("In § 523(a)(5) matters the bankruptcy court has concurrent jurisdiction with state courts.").

**11.** The Debtor also argued that it would be grossly inequitable to allow the Defendant to collect what would be a windfall from him after all these years.

In the Circuit Court action, Melissa has testified in depositions, that she is a high school graduate, that she attends Mott Community College and was currently working at a Wal–Mart store in Flint, Michigan. *Melissa testified that in school she was a "B" student, that she was never held back for any reason, and did not suffer from any psychological problems or learning deficiencies.*

Clearly, Melissa has matured into a reasonably educated adult who is capable of supporting herself. There are no physical, mental, or learning deficiencies that would create a need for support having reached the age of majority:

The reality of this case is that a 21 year old is trying to retroactively collect a child support from birth to ages 18½ from her biological father who was never ordered to pay support by a state court. Keith Hutchison is now 52 years old and retired from General Motors due to a physical disability. If successful, Melissa could be awarded damages in excess of $75,000.00 in damages, a figure that reflects the sum of what Hutchison could have paid in support if ordered at Melissa's birth. A damages award of this nature is a windfall for Melissa and catastrophic for Keith Hutchison. Plaintiff's Brief in Support of Summary Judgment, p. 5.

This argument should have just as much force if made in the first instance to the court with primary jurisdiction over the issue of whether to award retroactive support and if so, the amount thereof. The determination of support under Michigan law does not preclude consideration of equitable concepts. *See Phinisee v. Rogers,* 229 Mich.App. 547, 561, 582 N.W.2d 852 (1998) (suggesting that trial court may "consider the unique circum-

stances" of the case when fixing the amount of back support to be paid). *Cf.* Mich. Comp. Laws § 722.3(3) (permitting court to deviate from friend of court formula if "application of the child support formula would be unjust or inappropriate"). In any event, federal law as expressed in *Calhoun* governs the state court's decision-making as well.