PHINISEE v ROGERS

Docket No. 190353. Submitted May 13, 1997, at Detroit. Decided May 8, 1998, at 9:10 A.M. Leave to appeal sought.

Darcel Phinisee, who was born in 1975 and turned eighteen years old in December 1993, brought an action in February 1994 in the Genesee Circuit Court against Eugene J. Rogers, seeking a determination of filiation and support. The complaint contained claims of breach of a common-law duty to support a minor child and breach of the Paternity Act, MCL 722.714; MSA 25.494. The defendant filed a motion for summary disposition, alleging that the action was barred by the Paternity Act and also by virtue of res judicata, because the plaintiff's mother had brought a paternity action against the defendant in 1976 and the court had ruled that the defendant was not the plaintiff's father, although no final order was entered. The court, Judith A. Fullerton, J., granted summary disposition for the defendant with regard to the Paternity Act claim but found the common-law claim not barred by res judicata because there was no privity between the plaintiff and her mother with regard to the 1976 paternity action. A jury determined that the defendant was the plaintiff's father. The court entered a judgment and orders finding the defendant to be the plaintiff's father, requiring him to make support payments to the plaintiff from the date plaintiff's complaint was filed until she reaches 19½ years of age, and denying the plaintiff's request for attorney fees. The defendant appealed. The plaintiff cross appealed from the order partially granting and partially denying the defendant's motion for summary disposition and from the orders regarding the support payments and the request for attorney fees.

The Court of Appeals *held*:

1. The court properly found that res judicata does not bar the plaintiff's action against the defendant. Res judicata is inapplicable here because the plaintiff was not a party or a privy to her mother's 1976 action, there was no final, enforceable judgment entered in the 1976 action, and the plaintiff could not have been a party to the 1976 action because she was not eighteen years of age after August 1984 and before June 1986, as required under the Paternity Act, MCL 722.714(1); MSA 25.494(1). An illegitimate child's interests in establishing paternity differ from the mother's interests in estab-

lishing paternity. Extremely accurate scientific testing developed since 1976 now permits courts to confidently determine paternity.

2. The court properly granted the defendant's motion for summary disposition with regard to the cause of action under the Paternity Act because the plaintiff did not come within the provisions regarding the bringing of an action under the act contained in MCL 722.714; MSA 25.494.

3. Because the Paternity Act does not afford an illegitimate child the same rights as a legitimate child to bring an action after age eighteen, a common-law right exists for an illegitimate child over age eighteen to bring a suit for support as provided for and limited by the general disability tolling provision of MCL 600.5851(1); MSA 27A.5851(1). While there are two distinct statutory proceedings in which to establish the paternity of an illegitimate child, i.e., a paternity action and a finding of paternity incident to an illegitimate child's action for support and maintenance, nothing precludes the illegitimate child from pursuing its common-law right to support. The court properly denied the defendant's motion for summary disposition regarding the cause of action brought under the common law.

4. The court erred in concluding as a matter of law that it had to limit the plaintiff's damages to child support payments from the date of the filing of the lawsuit until age 19½ years old. If a cause of action for paternity under the common law is preserved by the tolling provisions of MCL 600.5851(1); MSA 27A.5851(1), it must be assumed that appropriate damages in the form of support from the time the child was born may be sought. The matter must be remanded for reconsideration of the issue of retroactive support for the period from the plaintiff's birth to the filing of her complaint.

5. The court did not err in denying the plaintiff attorney fees under MCL 600.2591; MSA 27A.2591. The defendant's defenses cannot be said to be devoid of legal merit because he offered reasonable bases for his belief that he could prevail in the matter.

6. The defendant, in denying that he is the plaintiff's father in his answer to a request that he admit that he is her father, had no reasonable grounds to believe that he might prevail with regard to the factual issue whether he was the plaintiff's father in view of a laboratory report setting forth the overwhelming probability (99.98 percent) that he is her father. The court abused its discretion in failing to award sanctions pursuant to MCR 2.313(C) for the defendant's refusal to admit a fact proved at trial.

Affirmed in part, reversed in part, and remanded.

WHITE, J., concurring, agreed that the court erred in concluding that, as a matter of law, support is restricted to the period commencing with the filing of the complaint. The conclusion that the plaintiff is entitled to retroactive child support commencing before the filing of the complaint should be reached on the bases that MCL 722.3; MSA 25.244(3) is silent with regard to the question of retroactive support, the Court in *Spada v Pauley*, 149 Mich App 196 (1986), concluded that the general disability tolling provisions apply, and the Court in *Dep't of Social Services v Brewer*, 180 Mich App 82 (1989), held that the Family Support Act, MCL 552.451 *et seq.*; MSA 25.222(1) *et seq.*, the provisions of which closely parallel MCL 722.3; MSA 25.244(3), authorizes the award of retroactive support commencing before the filing of the complaint.

1 ACTIONS — RES JUDICATA — WORDS AND PHRASES — PRIVITY.

A party seeking to apply the doctrine of res judicata must establish that the prior action was decided on the merits, the issues in the second action were or could have been resolved in the prior action, and both actions involved the same parties or their privies; privity is defined as mutual or successive relationships to the same right or property, or such an identification of interest of one person with another that it represents the same legal right; privity signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the other, although the other was not a party to the lawsuit; privity between a party and a nonparty requires both a substantial identity of interests and a working or functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation.

2. CHILDREN BORN OUT OF WEDLOCK — ACTIONS — RES JUDICATA.

The interests of the parties to a paternity action are not necessarily identical to or sufficiently similar to those of the illegitimate child so as to mandate application of the doctrine of res judicata in the child's subsequent action for filiation and support against the same defendant following the mother's unsuccessful paternity action; privity generally does not arise from the relationship between parent and child.

3. CHILDREN BORN OUT OF WEDLOCK — ACTIONS — LIMITATION OF ACTIONS.

Paternity actions are generally covered by statute; however, because the Paternity Act does not afford an illegitimate child the same rights as a legitimate child to bring an action after age eighteen, a common-law right exists for an illegitimate child over age eighteen to bring a suit for support as provided for and limited by the gen-

eral disability tolling provisions (MCL 600.5851[1], 722.711 *et seq.*; 27A.5851[1], 25.491 *et seq.*).

4. CHILDREN BORN OUT OF WEDLOCK — ACTIONS — COMMON LAW.

There are two distinct statutory proceedings in which to establish the paternity of an illegitimate child: a paternity action and a finding of paternity incident to the child's actions for support and maintenance; in addition, an illegitimate child may pursue a common-law right to support.

5. CHILDREN BORN OUT OF WEDLOCK — ACTIONS — DAMAGES.

A finding of paternity relates back to the child's birth; where a cause of action for paternity under the common law is preserved by the tolling provisions of MCL 600.5851(1); MSA 27A.5851(1), appropriate damages, including support from the time the child was born, may be sought.

*Loyst Fletcher, Jr.*, and *Barry A. Wolf*, for the plaintiff.

*Marvin R. Smith*, for the defendant.

Before: MARKEY, P.J., and JANSEN and WHITE, JJ.

MARKEY, P.J. Defendant Eugene J. Rogers appeals as of right and plaintiff Darcel Phinisee cross appeals as of right from the trial court's order partially granting and partially denying defendant's motion for summary disposition in this action to determine filiation and support. Plaintiff further cross appeals from the court's order requiring defendant to make support payments to plaintiff from the time plaintiff filed her complaint until she reaches 19½ years of age and denying plaintiff's request for attorney fees. We affirm in part, reverse in part, and remand.

Plaintiff was born in 1975. Her mother claimed that defendant was plaintiff's father and commenced a paternity action against him in 1976. In that case, the trial court ruled that defendant was not plaintiff's father, but no final order was ever entered in the

action. In December 1993, plaintiff turned eighteen years old. In February 1994, plaintiff commenced an action in her own name to establish defendant's paternity and to seek support from him. Her complaint contained claims for breach of a common-law duty to support a minor child and breach of the Paternity Act, MCL 722.714; MSA 25.494.

In response, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(5) and (7), alleging that plaintiff's complaint was barred by virtue of res judicata and the express terms of the Paternity Act. The trial court issued its opinion and order granting summary disposition to defendant on plaintiff's Paternity Act claim but denying summary disposition as to plaintiff's common-law claim upon finding a lack of privity between plaintiff and her mother with respect to the 1976 paternity action.

I

First, we address defendant's claim on appeal that res judicata prevents plaintiff from bringing the present cause of action because plaintiff's mother commenced a paternity action against defendant in 1976, in which he was found not to be plaintiff's biological father. We disagree. For res judicata to apply, defendant must establish the following: (1) the former suit was decided on the merits, (2) the issues in the second action were or could have been resolved in the former action, and (3) both actions involved the same parties or their privies. *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 215-216; 561 NW2d 854 (1997). Because res judicata is a question of law, we review de novo its application as well as

the court's action on a motion for summary disposition.

In light of this Court's decision in *Spada v Pauley*, 149 Mich App 196, 199, n 1, 204-205; 385 NW2d 746 (1986), we find that the doctrine of res judicata is inapplicable here for several reasons. First, plaintiff was not a party or a privy to her mother's 1976 action. Other jurisdictions have come to the same conclusion, many of them relying on the following passage from *Spada, supra* at 204-205:

> The interests of the parties to a paternity action are not necessarily identical to the illegitimate child's interests nor are they likely to be sufficiently similar to afford the child a forum to protect his rights under the Paternity Act. A mother may fail to initiate a paternity proceeding for various reasons. She may wish to avoid any contact with the father, she may wish to avoid disapproval of the community or her family, she may be able to support the child and not foresee a change in her circumstances, she may be subject to emotional strain and confusion that often attends the birth of an illegitimate child, or she may have a continuing relation with or affection for the father. . . . Also, the state's interest does not coincide with the illegitimate child's interest. The Department of Social Services is concerned with its own economic interest. A child's interests are much broader.[6]

[6] At some point, the law must recognize the fact that a child's interests in paternity litigation are much greater than the mother's interest in continued support. "In addition to the right of the child to receive support many other present as well as future rights of the child are involved, depending on the facts and circumstances of a specific case." *Wolfe v Geno* [*(On Remand)*, 134 Mich App 433, 435-436; 351 NW2d 316 (1984)](CYNAR, J., dissenting).

See *SOV v Colorado*, 914 P2d 355, 362, n 10 (Colo, 1996) (citing, for example, twelve cases from various jurisdictions where it is "well recognized" that a child's interests in a paternity action differ from those

of the child's mother); *Johnson v Norman*, 66 Ohio St 2d 186, 190; 421 NE2d 124 (1981) ("[p]rivity does not generally arise from the relationship between parent and child," so the dismissal with prejudice of the mother's paternity action in no way affected the child's common-law action for paternity and support); *GEB v SRW*, 422 Mass 158, 160-165; 661 NE2d 646 (1996) (settlement agreement between parents regarding paternity was not binding on the nonparty child because the mother's and child's interests are not the same and no guardian was appointed to represent the child), citing, e.g., *Symonds v Symonds*, 385 Mass 540, 545, n 7; 432 NE2d 700 (1982) ("[a]ny determination that the husband is not the father of a child born to his wife during marriage is, of course, not binding on the child who is not a party to the proceeding").

In *Sloan v Madison Heights*, 425 Mich 288, 295-296; 389 NW2d 418 (1986), our Supreme Court defined "privity" as follows: "In its broadest sense, privity has been defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.' " (Citation omitted). Black's Law Dictionary (6th ed), p 1199, defines privity as

> mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right. . . . [It] signifies that [the] relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon [the] other, although [the] other was not a party to lawsuit.

"Privity between a party and a non-party requires both a 'substantial identity of interests' and a 'working or functional relationship . . . in which the inter-

ests of the non-party are presented and protected by the party in the litigation.' " *SOV, supra* at 360, quoting *Public Service Co v Osmose Wood Preserving, Inc,* 813 P2d 785, 787 (Colo App, 1991).

We agree with *Spada, supra,* and the cases cited above, that plaintiff and plaintiff's mother, who filed the earlier unsuccessful paternity action against defendant, are not and were not in privity with each other. Moreover, there is no evidence on the record that a final, enforceable judgment was entered in the earlier paternity action, which would also preclude the application of res judicata. *SOV, supra* at 357, 359. Additionally, plaintiff could not have been a party to the original paternity action because she was not eighteen years of age after August 1984 and before June 1986, as required under MCL 722.714(1); MSA 25.494(1) of the Paternity Act. Accord *SOV, supra* at 360-361. We also agree with those courts that have recognized that an illegitimate child's interests in establishing paternity, which may extend not only to immediate support payments but also to future social security benefits and inheritance through the biological father, differ from the mother's interests in establishing paternity, which may be focused more on immediate financial concerns. Furthermore, extremely accurate scientific testing developed since 1976 now permits courts to confidently determine paternity. We will not require the trial court to shut its eyes to conclusive medical evidence establishing paternity merely because plaintiff's mother did not have access to the same information in 1976. Accordingly, we find that res judicata does not bar plaintiff's action against defendant.

II

Additionally, defendant and plaintiff both raise issues concerning the trial court's partial grant and partial denial of defendant's motion for summary disposition. Plaintiff brought her paternity and support claims under both the common law and the Paternity Act. The trial court granted defendant's motion for summary disposition as to plaintiff's cause of action under the Paternity Act but denied it with regard to plaintiff's cause of action brought under common law. We review de novo a trial court's ruling regarding a motion for summary disposition. *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994); see also *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994).

The Paternity Act, MCL 722.714; MSA 25.494, provided, in relevant part, at the time plaintiff commenced this action:

> (1) An action under this act shall be brought by the mother, the father, a child who became 18 years of age after August 15, 1984 and before June 2, 1986, or the department of social services as provided in this act. . . .
>
> \*    \*    \*
>
> (3) An action under this act may be instituted during the pregnancy of the child's mother, at any time before the child reaches 18 years of age, or for a child who became 18 years of age after August 15, 1984 and before June 2, 1986, before March 1, 1993. . . .[1]

---

[1] Pursuant to 1996 PA 308, MCL 722.714; MSA 25.494 was amended effective June 1, 1997, to read as follows:

   (1) An action under this act shall be brought in the circuit court by the mother, the father, a child who became 18 years of age after

Plaintiff turned eighteen on December 9, 1993. She filed her complaint in this action on February 8, 1994. Clearly, she did not fall within the provisions established under the act. Therefore, the trial court did not err in granting defendant's motion for summary disposition as to plaintiff's cause of action under the Paternity Act.[2]

Paternity actions are generally covered by statute; however, because the Paternity Act does not afford an illegitimate child the same rights as a legitimate child to bring an action after age eighteen, we have found a common-law right exists for an illegitimate child over age eighteen to bring a suit for support as provided for and limited by the general disability tolling provision of MCL 600.5851(1); MSA 27A.5851(1).[3]

---

August 15, 1984 and before June 2, 1986, or the family independence agency as provided in this act. . . .

(2) An action is not required to be brought under this act if the child's father acknowledges paternity under the acknowledgment of parentage act . . . .

(3) An action under this act may be commenced during the pregnancy of the child's mother or at any time before the child reaches 18 years of age. For a child who became 18 years of age after August 15, 1984 and before June 2, 1986, an action under this act may be commenced before January 1, 1995. . . .

\*    \*    \*

(10) If a determination of paternity is made under this act, the court may enter an order of filiation as provided in section 7. . . .

[2] Other jurisdictions with statutes similar to our Paternity Act have held that an illegitimate child has no independent cause of action for paternity or support under the act. See, e.g., *Johnson, supra* at 189 ("[s]tatutory paternity proceedings under R C Chapter 3111 are designed to provide a remedy for the mother, not the child"); *GEB v SRW, supra.*

[3] MCL 600.5851(1); MSA 27A.5851(1) reads as follows:

Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues,

*Spada, supra* at 206-207; accord *Johnson, supra* at
189, relying on the United States Supreme Court's
decision in *Gomez v Perez*, 409 US 535; 93 S Ct 872;
35 L Ed 2d 56 (1973);[4] *Franklin v Julian*, 30 Ohio St
2d 228; 283 NE2d 813 (1972) (illegitimate children
have the same right as legitimate children to bring a
civil action against their biological fathers for support
and maintenance). In *Gomez, supra* at 538, the
United States Supreme Court held that it is an uncon-
stitutional denial of equal protection to grant legiti-
mate children, but deny illegitimate children, a judi-
cially enforceable right to seek support from their
biological fathers.[5] See *Spada, supra* at 203.

> This language from *Gomez* has been interpreted by
> courts to mean that an illegitimate child has the same com-
> mon law right to support from his father as a legitimate
> child, *e.g.*, *JMS v Benson* (App, 1979), 91 Wis 2d 526; 283

---

the person or those claiming under the person shall have 1 year
after the disability is removed through death or otherwise, to make
the entry or bring the action although the period of limitations has
run. This section does not lessen the time provided for in section
5852.

[4] See also anno: *Right of illegitimate child to maintain action to deter-
mine paternity*, 19 ALR4th 1082, § 6, and cases cited therein.

[5] The Supreme Court held:

> [A] State may not invidiously discriminate against illegitimate
> children by denying them substantial benefits accorded children
> generally. We therefore hold that once a State posits a judicially
> enforceable right on behalf of children to needed support from
> their natural fathers there is no constitutionally sufficient justifica-
> tion for denying such an essential right to a child simply because
> its natural father has not married its mother. . . . We recognize the
> lurking problems with respect to proof of paternity. Those
> problems are not to be lightly brushed aside, but neither can they
> be made into an impenetrable barrier that works to shield other-
> wise invidious discrimination.

NW2d 465, 471;[6] and that an illegitimate child has a right
to bring an action to determine paternity *regardless of the
existence of an authorizing state statute, e.g.,* State v
Douty (1979), 92 Wash 2d 930, 934; 603 P2d 373; *Wynn v
Wynn* (Tex Civ App 1979), 587 SW2d 790, 793. [*Johnson,
supra* at 189, n 3. (Emphasis and footnote added).]

We agree with the court in *Johnson, supra,* that while
there are two distinct proceedings in which to estab-
lish the paternity of an illegitimate child, i.e., a pater-
nity action and a finding of paternity incident to an
illegitimate child's action for support and mainte-
nance, nothing precludes the illegitimate child from
pursuing his common-law right to support. Accord
*Franklin, supra.* Thus, the trial court did not err in
denying defendant's motion for summary disposition
as to plaintiff's cause of action brought under the
common law.

III

On cross appeal, plaintiff also asserts that the trial
court erred in limiting her damages to child support
payments from the date of the filing of the lawsuit
until age 19½ years old. We agree. On appeal, we
review a question of law de novo, *Rapistan Corp v
Michaels,* 203 Mich App 301, 306; 511 NW2d 918
(1994), but the decision to award child support will
not be reversed absent an abuse of discretion.
*Ghidotti v Barber (On Remand),* 222 Mich App 373,
377; 564 NW2d 141 (1997).

---

[6] *JMS, supra,* was reversed by the Wisconsin Supreme Court in *JMS v
Benson,* 98 Wis 2d 406, 413-415; 297 NW2d 18 (1980), but that case was
itself subsequently overruled by the same court in *In re Paternity of RWL,*
116 Wis 2d 150, 162-163; 341 NW2d 682 (1984).

Obviously, it makes no sense whatsoever to recognize a cause of action for an illegitimate child against his parent for support and permit that suit to be instituted within one year after the child turns eighteen years old, and to then find that damages, i.e., support payments, are limited to the period from the date of the filing of the complaint until the child turns eighteen or 19½. Plaintiff's right to child support payments is governed by MCL 722.3a; MSA 25.244(3a), which allows an award of support for a child who has reached eighteen years of age and is attending high school full time to continue until the child reaches the age of nineteen years and six months. Although plaintiff has no cause of action under the Paternity Act, we believe that the cases discussing the retroactive application of child support payments under that act are relevant because this is an analogous situation. Although nothing in the statute itself allows for support to be ordered retroactive to the child's birth, case law interpreting the Paternity Act does.

In *Thompson v Merritt*, 192 Mich App 412, 420-422; 481 NW2d 735 (1991), one of the issues on appeal was whether the trial court erred in ordering the payment of child support retroactive to the child's birth. In holding that the trial court did not err in doing so, this Court found that the order of retroactive support was not a modification of an existing order; therefore, it was appropriate. *Id.* Moreover, this Court has also held that "children born out of wedlock [are] no less deserving of support than those children born in wedlock." *Boyles v Brown*, 69 Mich App 480, 483; 245 NW2d 100 (1976). A finding of paternity certainly contemplates that the finding relates back to the child's birth. If a cause of action for paternity under the com-

mon law is preserved by the tolling provisions of MCL 600.5851(1); MSA 27A.5851(1), it must be assumed that appropriate damages can be sought, which in a paternity action, of course, means support from the time a child was born. As noted in *Seegert v Zietlow*, 95 Ohio App 3d 451, 460; 642 NE2d 697 (1994):

> Because the parents' duty to support their children generally extends to the child's eighteenth birthday . . . it would be illogical to extend the statute of limitations beyond the child's majority if the legislature contemplated that only current support be awarded in a paternity action. After a child has reached the age of majority, the putative parent would generally no longer have any duty to support that child. Thus, by extending the statute of limitations beyond the age of majority, when the parent no longer has any duty of support, it appears the legislature envisioned that back child support would be awarded in a parentage action.

We find the *Seegert* court's reasoning persuasive and applicable. Here, if the Legislature had not envisioned the award of back child support in a paternity action, it would have made no sense to extend the statute of limitations.

As the *Seegert* court further noted, *id.*, and as this state also recognized in *Whybra v Gustafson*, 365 Mich 396, 400; 112 NW2d 503 (1961), and *Spada*, *supra* at 206-207, any rule prohibiting back child support in a paternity proceeding, thereby denying illegitimate children support after a paternity adjudication while allowing back child support in other proceedings, would appear to violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article 1, § 2 of the Michigan Constitution. Moreover, as previously noted, the *Spada* Court concluded that the general disability toll-

ing provisions apply. Further, in *Dep't of Social Services v Brewer*, 180 Mich App 82; 446 NW2d 593 (1989), this Court held that the Family Support Act, MCL 552.451 *et seq.*; MSA 25.222(1) *et seq.*, the provisions of which closely parallel MCL 722.3; MSA 25.244(3), authorizes the award of retroactive support commencing before the filing of the complaint. Accordingly we conclude that the trial court in the instant case erred in concluding that, as a matter of law, support is restricted to the period commencing with the filing of the complaint. While the court referred to the circumstances of the case, indicating it used its discretion, the complete colloquy indicates the court viewed the matter as a legal question regarding which there was no precedent. We remand for reconsideration of the issue of retroactive support for the period from plaintiff's birth to the filing of her complaint. In reconsidering the issue, the court may consider any appropriate friend of the court support guidelines in effect for the relevant years, but may also consider the unique circumstances of this case.

IV

Finally, plaintiff on cross appeal contends that the trial court erred in denying her an award of attorney fees under MCL 600.2591; MSA 27A.2591 and MCR 2.313(C). We review under a clearly erroneous standard a trial court's finding with regard to whether attorney fees should be awarded because a frivolous defense was presented. *State Farm Fire & Casualty Co v Johnson*, 187 Mich App 264, 268-269; 466 NW2d 287 (1991). We review under an abuse of discretion standard a court's decision to award sanctions against a party for denying a request to admit that which is

proved at trial. *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 456-458; 540 NW2d 696 (1995).

Plaintiff asserts that defendant's defense was frivolous in two ways: (1) at trial defendant presented no evidence to rebut plaintiff's introduction of blood test results indicating a 99.98 percent likelihood that defendant was plaintiff's father; and (2) before trial, faced with the blood test results, defendant refused to affirmatively answer a request for admission that he was plaintiff's biological father. Plaintiff overlooks the fact that throughout the trial and on appeal, defendant argued that plaintiff could not bring this action against him under either the Paternity Act or a common-law theory, or, in the alternative, that the action was barred by res judicata, presenting applicable case law to support his position. Therefore, defendant's defenses cannot be said to be devoid of arguable legal merit because defendant offered reasonable bases for his belief that he could prevail in the matter. Therefore, the trial court did not err in denying plaintiff attorney fees under MCL 600.2591; MSA 27A.2591.

Plaintiff also asserted that she was entitled to sanctions pursuant to MCR 2.313(C), which states in relevant part:

> Expenses on Failure to Admit. If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The Court *shall* enter the order unless it finds that

*     *     *

(3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or

(4) there was other good reason for the failure to admit. [Emphasis added.]

Here, the lower court record reflects that a January 3, 1995, report from the National Legal Laboratories, Inc., sent to defendant's counsel calculated defendant's "probability of paternity" at 99.98 percent. On March 9, 1995, plaintiff submitted the following request for admission to defendant: "(1) Do you admit or deny that you are the biological father of plaintiff, Darcel Phinisee?" to which defendant answered "deny as untrue." In a judgment dated October 12, 1995, entered after a jury trial held on this matter, the court set forth the jury's finding that "Defendant, Eugene J. Rogers, is the biological father of plaintiff, Darcel Phinisee."

In view of the laboratory report setting forth the overwhelming probability that defendant is plaintiff's father, certainly defendant had no reasonable ground to believe that he might prevail on that matter. For similar reasons, defendant simply could assert no good reason for failing to admit that fact. Defendant could have defended on the legal issue and conceded the factual issue, thereby averting what proved to be a clearly unwarranted trial. Consequently, we find that the trial court abused its discretion in failing to award sanctions pursuant to MCR 2.313(C) for defendant's refusal to admit a fact proved at trial.[7]

---

[7] This is not to imply that whenever a putative father is faced with a paternity test yielding a probability of this magnitude, a denial of paternity is a basis for awarding sanctions.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

JANSEN, J., concurred.

WHITE, J. (*concurring*). I concur in the conclusion that case law establishes that plaintiff is not bound by the prior litigation involving her mother and defendant.

I also agree that under *Spada v Pauley*, 149 Mich App 196; 385 NW2d 746 (1986), plaintiff has a common-law equitable action to enforce her right to support coextensive with the rights of a legitimate child as set forth in MCL 722.3; MSA 25.244(3), subject to the general disability tolling provision, MCL 600.5851(1); MSA 27A.5851(1).

With regard to the question of retroactivity, I agree that the trial court erred in concluding that, as a matter of law, support is restricted to the period commencing with the filing of the complaint. I would reach this conclusion on the basis that MCL 722.3; MSA 25.244(3) is silent with regard to the question of retroactive support and the *Spada* Court concluded that the general disability tolling provisions apply. Further, in *Dep't of Social Services v Brewer*, 180 Mich App 82; 446 NW2d 593 (1989), this Court held that the Family Support Act, MCL 552.451 *et seq.*; MSA 25.222(1) *et seq.*, the provisions of which closely parallel MCL 722.3; MSA 25.244(3), authorizes the award of retroactive support commencing before the filing of the complaint.