# STATE OF MICHIGAN

# COURT OF APPEALS

---

BRONSON HEALTH CARE GROUP, INC, d/b/a
BRONSON METHODIST HOSPITAL, a
Michigan nonprofit corporation,

        Plaintiff-Appellant,

v

HOME-OWNERS INSURANCE COMPANY, a
Michigan insurance agency,

        Defendant-Appellee.

UNPUBLISHED
July 16, 2015

No.   321908
Kalamazoo Circuit Court
LC Nos. 2013-000399 NF

---

HOME-OWNERS INSURANCE COMPANY, a
Michigan insurance agency,

        Plaintiff-Appellee,

v

ROBERT WENDELL BROWN, III,

        Defendant-Appellee,

and

BRONSON HEALTH CARE GROUP, INC, d/b/a
BRONSON METHODIST HOSPITAL, a
Michigan nonprofit corporation,

        Appellant.

No.   322243
Kalamazoo Circuit Court
LC No.   2012-000643 CK

---

Before:  SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

-1-

In this consolidated appeal,[1] Appellant Bronson Health Care Group, Inc ("Bronson) appeals in both docket numbers. In Docket No. 321908, Bronson appeals by delayed leave granted the trial court's denial of its motion for post-judgment intervention. In Docket No. 322243, Bronson appeals by right from the trial court's grant of summary disposition to Appellee Home-Owners Insurance Company ("Home-Owners") on the grounds that Bronson's claims were barred by res judicata. We reverse in both cases and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

These cases arise from an August 31, 2012 motor vehicle accident involving an automobile driven by a non-party and a motorcycle driven by defendant Robert Brown, III ("Brown"). Brown was injured in the accident and received treatment from, among other providers, Bronson. Home-Owners insured the automobile involved in the accident. Bronson provided bills to Home-Owners and requested payment under the no-fault act, MCL 500.3101, et seq.

Home-Owners filed a complaint for declaratory judgment against Brown[2] in December of 2012, alleging that it had "made several efforts to try to investigate whether there is coverage available, pursuant to its policy, for the injuries sustained in this matter by Defendant and Ms. York;[3] however, Defendant has failed to cooperate with that investigation." Home-Owners was unable to personally serve Brown. The trial court granted Home-Owners's motion for alternate service. After Brown failed to respond to the alternate service, the trial court granted Home-Owners a default against Brown. Home-Owners then moved the trial court for entry of a default judgment against Brown. Counsel for Brown appeared at the motion hearing and argued against the entry of a default judgment on the grounds that the alternate service was defective and the trial court had not obtained personal jurisdiction over Brown. The trial court granted Home-Owners a default judgment on June 3, 2013.

Bronson filed suit against Home-Owners, seeking reimbursement for services provided to Brown, on August 24, 2013.[4] Then, on October 21, 2013, Bronson and Borgess Medical Center[5] jointly moved the trial court for post-judgment intervention in Home-Owners's declaratory action. The trial court denied that motion, stating in relevant part:

---

[1] See *Home-Owners Ins Co v Brown*, unpublished order of the Court of Appeals, issued November 13, 2014 (Docket No. 322243).

[2] Home-Owners did not name Bronson as a defendant in that action.

[3] York was a passenger on Brown's motorcycle. She was not a party to either of the cases below and is not a party to this appeal.

[4] Both cases were presided over by the same trial judge.

[5] Borgess Medical Center also provided medical services to Brown. Borgess is not a party to this appeal and was not involved in any of the litigation below apart from filing the joint motion to intervene.

> I am going to deny the motion. It certainly is a tricky situation because you have someone who has not been cooperative and an insurance company has to go and they have to do their investigation to see whether their coverage applies or not.
>
> And I certainly understand that it puts the hospitals in a bind because they may or may not have certain arguments. But I'm not aware of any requirement in general practice that all of the medical care providers, if there are claims that have been made, that they're obligated to go out and find those individuals and sue those individuals, too.
>
> * * *
>
> But I'm not going to grant the request to intervene post-judgment in this case. I think the file reflects that, unfortunately, Mr. Brown was not cooperating and appeared to be, in the Court's eyes, avoiding service, which is why the request for alternate service was made.

On March 6, 2014, Home-Owners moved for summary disposition in Bronson's action against it. The trial court granted the motion on the grounds that Bronson's claims were barred by res judicata due to the default judgment in the other case. These appeals followed.

## II. DOCKET NUMBER 322243

In Docket No. 322243, Bronson argues that the trial court erred in denying its motion for post-judgment intervention. We agree. We review a trial court's decision on a motion to intervene for an abuse of discretion. *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). A trial court abuses its discretion when its decision falls outside the principled range of outcomes. *Id*.

MCR 2.209 addresses intervention, and provides in relevant part:

> **(A) Intervention of Right.** On timely application a person has a right to intervene in an action:
>
> * * *
>
> (3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"The rule for intervention should be liberally construed to allow intervention where the applicant's interests may be inadequately represented." *Neal v Neal*, 219 Mich App 490, 492; 557 NW2d 133 (1996). However, "intervention may not be proper where it will have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Precision Pipe & Supply, Inc v Meram Const, Inc*, 195 Mich App 153, 156; 489 NW2d 166 (1992). To

that end, the requirement of a timely application requires an intervenor to be diligent in seeking intervention and not "sit on its rights." *Id*. at 157. Further, although there is not a blanket prohibition on post-judgment intervention, see *Scion, Inc v Martinez*, 491 Mich 889; 810 NW2d 33 (2012), "[t]here should be considerable reluctance on the part of the courts to allow intervention after an action has gone to judgment and a strong showing must be made by the applicant." *Dean v Dep't of Corrections*, 208 Mich App 144, 150; 527 NW2d 529 (1994).

Our review of the record leads us to conclude that Bronson had a right to intervene under MCR 2.209(A)(3). Bronson had an interest in the "property or transaction" that was the subject of Home-Owner's declaratory action, i.e., no-fault benefits paid or payable to Brown. The record indicates that Bronson provided over $140,000 in medical services to Brown. The resolution of the issue of whether Brown was entitled to benefits from Home-Owners would affect Bronson's collection of those funds. See MCL 500.3105; MCL 500.3107; see also *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 378; 554 NW2d 49 (1996). Further, because Brown failed to participate in the litigation apart from his appearance at the default judgment motion hearing, Bronson's absence impaired or impeded its ability to protect its interests.

Further, Bronson did not "sit on its rights." *Precision Pipe & Supply, Inc*, 195 Mich App at 157. The record is devoid of evidence that Bronson was aware of the declaratory action prior to the entry of the default judgment. Although Home-Owners argues that statements made by Brown's attorney suggest some communication between the attorney and Bronson, such an inference is tentative at best. The record does reflect that Bronson was aware of the default judgment by August 12, 2013. Two weeks later, Bronson filed suit to protect its rights. Within two months, it had moved to intervene in the declaratory judgment action. While Bronson could have moved to intervene earlier rather than filing a separate suit, we do not find the relatively short delay in filing significant, especially in light of the fact that Bronson almost immediately took *some* action to protect its rights.

Finally, while Bronson's post-judgment intervention will extend the time for resolution of the case, we do not find that it would "have the effect of delaying the action or producing a multifariousness of parties and causes of action." *Precision Pipe & Supply, Inc,* 195 Mich App at 156. The root of the declaratory judgment action remains the determination of whether Brown was entitled to statutory no-fault benefits from Home-Owners; Bronson's claims are derivative of that entitlement. See MCL 500.3107; *Moody v Home-Owners Ins Co*, 304 Mich App 415, 440; 849 NW2d 31 (2014), lv granted on other grounds 497 Mich 957 (2015).

We therefore conclude that the trial court abused its discretion in failing to grant Bronson's motion for post-judgment intervention. Accordingly, we reverse the trial court's order in Docket No. 322243, and remand for further proceedings consistent with this opinion.[6]

---

[6] Should other healthcare providers seek to intervene in the action below, the trial court should analyze whether their application is timely under MCR 2.209(A). With regard to Borgess Medical Center, which jointly with Bronson moved for intervention below, our reversal of the

In Docket No. 321908, Bronson argues that the trial court erred in granting it summary disposition on the grounds that the default judgment barred its claims through res judicata.  We agree.  Although the trial court was correct in stating that in general res judicata principles may apply to a default judgment, see *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006), we find that it erred concluding that the default judgment barred Bronson's claims in the instant case.  The application of res judicata, as well as a trial court's decision on a motion for summary disposition, is reviewed de novo on appeal. *Phinisee v Rogers*, 229 Mich App 547, 551-552; 582 NW2d 852 (1998).

The doctrine of res judicata allows the disposition of a previous suit to bar a subsequent suit if certain conditions are met.  *Id*.  "For res judicata to apply, defendant must establish the following: (1) the former suit was decided on the merits, (2) the issues in the second action were or could have been resolved in the former action, and (3) both actions involved the same parties or their privies." *Id*. at 551.  "A default judgment is treated the same as a litigated judgment and is considered a decision on the merits." *Richards*, 272 Mich App at 531.  "Privity between a party and a non-party requires both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee*, 229 Mich App at 553 (quotation marks and citations omitted).

In the instant case, Home-Owners argued below, and the trial court agreed, that this Court's decision in *TCBI, P.C. v State Farm Mutual Automobile Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010), indicates that Bronson's suit is barred by res judicata.  We disagree.  The factual situation in *TCBI* was substantially different from the instant case.  In *TCBI*, the injured party had initially brought suit against his automobile insurer for non-payment of his no-fault claims.  *Id*. at 41.  The injured party received a jury verdict of no cause of action in his case.  *Id*. Subsequently, the trial court held that TCBI's claim against the insurer for medical services provided to the injured party was barred by res judicata.  *Id*.  This Court affirmed, stating:

> Plaintiff, by seeking coverage under the policy, is now essentially standing in the shoes of Afful.  Being in such a position, there is also no question that plaintiff, although not a party to the first case, was a "privy" of Afful.  "A privy of a party includes a person so identified in interest with another that he represents the same legal right. . . ." [*Id*. at 44 (citation omitted).]

By contrast, it was Home-Owners that initially brought a declaratory judgment action against Brown.  Brown did not "seek coverage" under a policy or otherwise, and asserted no claims; rather, he was named as the defendant in the original suit, and appears to have been interested principally in avoiding service, not in asserting his own claims for no-fault benefits or in protecting Bronson's (or other healthcare providers') interests in determining whether Home-Owners was liable for no-fault benefits or securing payment for services rendered by healthcare providers.  The only action taken by Brown, through his counsel, in the initial suit was a post hoc

---

trial court's order permits it to intervene in the declaratory action, should it still have an interest in the resolution of that action.

effort to have the default set aside and to prevent the resulting entry of a default judgment. Thus, certainly at the time the default was entered, and unlike the injured party and the plaintiff in *TCBI*, Bronson and Brown did not have a "substantial identity of interests," nor did they have "a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee*, 229 Mich App at 553 (quotation marks and citations omitted).[7] *TCBI* does not compel a different conclusion, in light of the fact that the privity of the parties in that case was not at issue, and in any event was established through the insured's litigation of his claim for no-fault benefits. *TCBI*, 289 Mich App at 44. We therefore reverse the trial court's grant of summary disposition in Docket No. 321908.[8]

Reversed in both dockets and remanded for further proceedings. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[7] The default judgment against Brown resulted from his inability to demonstrate "good cause" for failing to answer the complaint against him and for setting aside the default. The most critical stage of the proceedings, therefore, was the time period leading up to the entry of default, at which time (if ever) Brown and Bronson were not in privity.

[8] We need not decide, in either docket, whether the statements made by Home-Owners's attorney at the default judgment motion hearing constituted a "waiver" of the application of the default judgment to Bronson's claims, or that the doctrine of judicial estoppel should be applied in light of those statements.