*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MONTE SHEARER,

        Plaintiff-Appellee,

v

AMERICAN OAK RESORT and ART JENSEN,

        Defendants-Appellants.

UNPUBLISHED
July 8, 2021

No. 348418
Roscommon Circuit Court
LC No. 16-723124-NO

Before: MURRAY, C.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Defendants, Art Jensen and American Oak Resort, appeal as of right a judgment for plaintiff, Monte Shearer, entered after a jury trial. Plaintiff was injured after falling through a dock at the resort, which is owned by Jensen. Plaintiff sued defendants for negligence. Defendants initially failed to participate in discovery, and a default was entered against them with regard to liability. The trial court conducted a jury trial pertaining solely to damages. On appeal, defendants take issue with the entry of the default and with the trial court's decisions to require defendants to post a bond and to sanction defendants for denying certain requests for admission (RFAs). We affirm.

## I. DEFAULT

Defendants contend that the entry of default with regard to liability must be reversed because the trial court failed to analyze pertinent caselaw factors pertaining to defaults.[1] A problem with defendants' argument, however, is that they did not challenge the default until they filed a motion for reconsideration. In fact, in a written motion in August 2018 and during oral arguments that same month, defendants' attorney affirmatively represented that he was not

---

[1] Defendants also complain that the court clerk was not authorized to enter the default, but this argument is irrelevant because the trial court reaffirmed the entry of default in an order dated June 28, 2017. In other words, even assuming, for purposes of argument, that the clerk's entry of default was erroneous, any error was later cured.

-1-

challenging the entry of default regarding liability but was simply seeking a full trial on damages. As stated in *Varran v Granneman*, 312 Mich App 591, 623; 880 NW2d 242 (2015), "Waiver is the voluntary and intentional relinquishment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." (Cleaned up.) Further, "[a] party is not allowed to assign as error on appeal something which his or her own counsel deemed proper . . . since to do so would permit the party to harbor error as an appellate parachute." *Marshall Lasser, PC v George*, 252 Mich App 104, 109; 651 NW2d 158 (2002) (cleaned up). The issue has been waived.[2]

After defendants obtained a new attorney, Philip Ellison, they filed a motion for reconsideration of the order of default, arguing, in part, that the court failed to analyze proper caselaw factors and alternatives on the record before entering the default. This Court "review[s] for an abuse of discretion a trial court's decision on a motion for reconsideration. An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014) (cleaned up).[3]

MCR 2.119(F)(3) states, in pertinent part, that the party seeking reconsideration, to obtain relief, "must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error."

MCR 2.313(B)(2) states, in part:

> *Sanctions by Court in Which Action Is Pending*. If a party or an officer, director, or managing agent of a party, or a person designated under MCR 2.306(B)(5) or 2.307(A)(1) to testify on behalf of a party, fails to obey an order to provide or permit discovery, including an order entered under subrule (A) of this rule or under MCR 2.311, the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

---

[2] Even if the issue is deemed merely unpreserved, see *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved."), it was not plainly erroneous for the court to fail to engage in an analysis in which it was not asked to engage, especially when defendants' attorney affirmatively represented that he was not going to challenge the entry of a default but was only going to contest damages, *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014) ("An unpreserved nonconstitutional claim of error is reviewed for plain error affecting substantial rights.").

[3] We note that abuse of discretion is also the standard of review applicable to the setting aside of a default and to the imposition of discovery sanctions. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011); *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998).

\* \* \*

(c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party[.]

In *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990), the Court stated:

Among the factors that should be considered in determining the appropriate sanction [for the failure to file a witness list] are: (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive.

In *Thorne v Bell*, 206 Mich App 625, 632-633; 522 NW2d 711 (1994), the Court stated:

Before imposing the sanction of a default judgment, a trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether an existing discovery order was violated, the amount of time that has elapsed between the violation and the motion for a default judgment, the prejudice to defendant, and whether wilfulness has been shown. The court should evaluate other options before concluding that a drastic sanction is warranted. The sanction of a default judgment should be used only when there has been a flagrant and wanton refusal to facilitate discovery. [Citations omitted.]

In *Traxler v Ford Motor Co*, 227 Mich App 276, 286; 576 NW2d 398 (1998), the Court listed the *Thorne* factors as "factors that a trial court should consider before ordering a default[.]" In *Vincencio v Ramirez*, 211 Mich App 501, 506-507; 536 NW2d 280 (1995), this Court, in discussing a sanction for a party's failure to appear at trial, stated:

Dismissal is a drastic step that should be taken cautiously. Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper. Here, because the trial court did not evaluate other available options on the record, it abused its discretion in dismissing the case. [Cleaned up.]

In the present case, the court issued a lengthy opinion in denying the motion for reconsideration. The court outlined how Jensen had failed to answer discovery requests, failed to appear at his scheduled deposition, and failed to maintain contact with his attorney. The court also

indicated that *even after* an order to compel was issued, Jensen failed to comply.  The court noted that Jensen did not provide discovery or obtain counsel (or appear *in propria persona*) as ordered.[4]

The court's opinion adequately demonstrated its belief that there had been a "flagrant and wanton refusal to facilitate discovery."  *Thorne*, 206 Mich App at 633.  The court's opinion revealed "its reasons for imposing such a grave sanction in order to allow for meaningful appellate review."  *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 88; 618 NW2d 66 (2000).  Given the repeated and numerous discovery violations, the court did not abuse its discretion by concluding that no error requiring correction had occurred and that the default with regard to liability was appropriate.  This conclusion is bolstered by the fact that one of Jensen's own attorneys stated at a June 2017 hearing that "given the track record in this case, in my preliminary discussions with my client I don't see that I have enough to [vacate the default]."

Defendants claim that the court never considered other options on the record.  However, at an August 2017 hearing, the court, when analyzing the proper extent of a proposed trial on damages, cited favorably to *Kalamazoo Oil* and stated that "the facts of the case here with regard to . . . discovery abuses and the [c]ourt sanction are almost spot on to a tee the abuses that took place in *Kalamazoo Oil*."  In *Kalamazoo Oil*, *id*. at 77-78, the defendant failed to comply with discovery and failed to appear for his deposition, and a default was entered.  This Court affirmed, stating: "The record reveals defendant's deliberate noncompliance with court rules and a discovery order in addition to what the trial court evidently viewed as an attempt to mislead the court and disrupt the progression of the lawsuit.  The trial court recognized that such manipulation of the legal process is deserving of severe sanction."  *Id*. at 89.  The trial court's mention of *Kalamazoo Oil* and its other statements in the record show that it adequately considered whether the drastic sanction of a default was appropriate.  While it is true that the court's statements at the August 2017 hearing occurred after its June 28, 2017 order granting the default, the court cited to the August 17 hearing in responding to defendants' motion for reconsideration, in which defendants had argued that "[a] clear record must be made to determine whether the [caselaw] factors warrant the continued imposition of the harshest penalty the discovery rules may impose."

The upshot is that although the court did not *initially* review the relevant factors (because it had not been asked to do so), the court thoroughly analyzed the *Kalamazoo Oil* factors in denying defendant's motion for reconsideration.  There is no basis for reversal.[5]

---

[4] After the initial discovery violations and entry of the order to compel, the court gave Jensen 30 days to obtain a different attorney and 45 days to provide discovery.  He met neither deadline.

[5] Defendants complain that the court's earlier orders regarding a 30-day stay for Jensen to obtain an attorney and a 45-day period for Jensen to provide discovery were confusing.  But the court clearly stated at a March 2017 hearing that "there's an additional 15 days that [Jensen] would have after counsel to address" discovery.  The court explicitly pointed out that if the timeline was difficult for the new attorney, "accommodation" could be made.  No "confusion" is apparent.  Defendants also claim that plaintiff's attorney filed for a default before the expiration of the 45-day period, but this is irrelevant because the initial default was not entered until after the expiration

## II. BOND

Defendants contend that the court erred by requiring defendants to post a $20,000 cash bond under MCR 2.109(A) because that court rule indicates that a bond for costs can be required only upon the motion of a party "against whom a claim has been asserted[.]" Defendants state that a defendant may request that a *plaintiff* be required to post a bond and that the court erred by requiring *defendants* to post a bond. Defendants contend that the bond amounted to an improper prejudgment attachment of funds in order to satisfy the ultimate judgment and that plaintiff must be required to return any funds received from the bond.

Although defendants did initially argue below that the "[c]ourt can't impose security at all on a defendant" and argued that the bond order should be vacated, after trial, defense counsel Ellison argued that out of the $20,000 that had been provided by Jensen, $14,000 should be allocated to Ellison because Jensen had not paid him. Ellison had filed an attorney's lien against Jensen's property and argued that the $20,000 in bond money was part of this property. Plaintiff's counsel, Leonard Miller, argued that the money was to be used "for the benefit of plaintiff's costs, attorney fees, and sanctions." The court stated that it would release $5,600 of the money to Miller for attorney fees in connection with RFA violations and that amounts for "costs" would be "hash[ed] out later."

In July 2019, Ellison appeared on a motion to withdraw as defendants' counsel on the basis of a lack of communication and payment. He stated that he and Miller had resolved their dispute over how to use the bond money. The agreement was reflected in the court's July 8, 2019 order. The order provided that $15,000 was to be released to plaintiff and his attorney and was to be used toward payment of plaintiff's costs and attorney fees. It provided that the remaining $5,000 was to be released to defendants. The register of actions shows that the bond money was, in fact, disbursed consistent with the order.

This sequence of events shows that defendants, through their attorney, *agreed* to how the bond would be disbursed and *agreed* that $15,000 of it would go to plaintiff and his counsel. The current argument that plaintiff must return the funds received has been waived. *Varran*, 312 Mich App at 623.

In addition, although the trial court initially ordered the bond under MCR 2.109, after various arguments were made about the bond, the court later clarified that it was imposing the bond not under MCR 2.109 but as a "sanction" under MCR 2.313(B)(2). The court noted that Jensen's obstructionism had "required various hearings and procedures that otherwise would not have been necessary at great expense to the plaintiff." Defendants' question presented on appeal and the substance of their arguments focus on MCR 2.109. The question presented and the

---

of the period, and it not in dispute that defendants did not meet either the 30-day deadline to obtain an attorney or the 45-day deadline to provide discovery.

arguments are based on a faulty premise and therefore provide no basis for reversal even despite the affirmative waiver of the issue.

### III. SANCTIONS IN CONNECTION WITH THE REQUESTS FOR ADMISSION

Defendants contend that the trial court erred by concluding that defendants, under MCR 2.313(C)(2), would be required to pay for plaintiff's expenses in establishing certain facts that defendants had denied in response to plaintiff's RFAs. MCR 2.313(C)(2) states:

> *Failure to Admit.* If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that
>
> (a) the request was held objectionable pursuant to MCR 2.312,
>
> (b) the admission sought was of no substantial importance,
>
> (c) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (d) there was other good reason for the failure to admit.

The imposition of sanctions under MCR 2.313(C) is reviewed for an abuse of discretion. *Phinisee v Rogers*, 229 Mich App 547, 561-562; 582 NW2d 852 (1998).

Plaintiff, by way of the RFAs, sought to establish that Jensen had "caused" an unlicensed private investigator to attach GPS (global-positioning system) tracking devices to plaintiff's and plaintiff's wife's vehicles.[6]

Jensen testified at a February 2018 hearing that he had hired Chris Bunge to investigate plaintiff to obtain evidence to use in the litigation. Jensen claimed that he did not direct Bunge to place any tracking devices and "actually gave him specific instructions not to do anything . . . like that." But plaintiff's counsel, Miller, later asked how Terry Frasier (from whom Bunge obtained the trackers) came to possess the trackers. Jensen said, "[H]e bought them." Miller asked, "Did you fund them, did you say get them, did you have anything to do him [sic], would Terry—" Crucially, Jensen replied, "Absolutely." Miller asked what Jensen's "involvement was," and Jensen answered, "Well, I—I you know, at the time we didn't know what was legal, what wasn't legal so, yeah, Chris was going to Terry's house so Terry got them, yes." Miller asked, "In your

---

[6] Jensen was attempting to obtain photographic evidence that plaintiff's injury was not as incapacitating as plaintiff was claiming.

direction?" Jensen replied, "Yes." Miller also asked, "You caused Mr. Bunge to be in possession of the tracking device[s]?" Jensen answered, "Yes."

Bunge testified that Jensen hired him to surveil plaintiff, provided him with two trackers, and told him how to use the trackers. Bunge said that Jensen knew he had placed the trackers on plaintiff's and plaintiff's wife's vehicles. Bunge explained that he had seemed conciliatory in the recorded telephone conversations with Jensen that were played at the hearing because Jensen had not yet paid him in full and he wanted to get the rest of the money owed. On cross-examination, Bunge said that Jensen had never told him to place the trackers "right now"—i.e., immediately—but stated, "That's why he gave them to me though."

At an earlier hearing, Bunge was asked, "Did [Jensen] ask you to put trackers on Mr. and Mrs. Schearers' [sic] vehicles?" He replied, "Yes." At the February 2018 hearing, Bunge stated that he testified truthfully at the earlier hearing.

Defendants were asked to admit that Jensen "caused, through another person, a tracking device to be attached to the motor vehicle of" plaintiff and plaintiff's wife, but they issued a denial. Defendants contend that they had a reasonable ground to answer as they did. See MCR 2.313(C)(2)(c). But the trial court acted within its discretion by finding that defendants denied something later proved to be true[7] and that defendants had no reasonable ground for believing that they might prevail on the matter. Indeed, *Jensen himself* testified that he paid for the trackers and directed Bunge to obtain them from Frasier. Bunge affirmed that Jensen knew he had placed the trackers on plaintiff's and plaintiff's wife's vehicles. No error is apparent with regard to the court's ruling, especially given that Jensen's credibility had been impeached by his lying with regard to whether he owned the resort where the injury occurred.[8]

Defendants take issue with the fact that plaintiff did not file a motion for expenses incurred in relation to proving the truth of the "trackers" issue. See MCR 2.313(C)(2). However, this is a disingenuous argument. A sentencing for civil contempt had been pending, and defendants' own attorney argued that in lieu of upholding the finding of contempt, the court should deal with the matter under MCR 2.313. The lack of a motion is irrelevant given that defendants *conceded* to proceeding under the court rule.

---

[7] Plaintiff proved the fact to the court's satisfaction during the pertinent court hearings. Cf. *King v Mich State Police Dep't*, 303 Mich App 162, 184; 841 NW2d 914 (2013) ("Plaintiffs thus did not prove the truth of the matter regarding which admissions were requested under MCR 2.312, as there was no hearing or trial in which plaintiffs were required to do so.").

[8] Plaintiff, on appeal, states that defendants' denial that Jensen owned the property in question was also sanctionable, but the court did not base its sanctions on this particular denial. The court considered this particular denial only for purposes of character and impeachment.

Affirmed.  Plaintiff may tax costs as the prevailing party.  MCR 7.219(A).


/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Michelle M. Rick